STAFFORD NATIONAL BANK *vs.* HORATIO N. PALMER AND OTHERS.

The directors of a Massachusetts manufacturing corporation, who were also its principal stockholders, decided to organize the company as a joint stock corporation under the laws of Connecticut, and locate its office in this state, but to carry on its manufacturing business in the state of Massachusetts as before. The new corporation was organized, and the property of the old corporation transferred to it. Afterwards the new corporation failed, and one of its creditors, claiming that the new company had not been legally organized and that its members were liable as partners, brought suit against *M*, with the other members, as such partners. *M* had been a stockholder in the old company, and knew that a re organization under the laws of this state was being considered by the directors, but he had nothing to do with the measures taken for the purpose and did not sign the articles of association, his share of the stock being subscribed for by one of the directors simply as "attorney." Soon after the re-organization he was informed by the secretary of the fact, and that if he would send in his certificate of stock in the old company he would send him a certificate for the same amount in the new, which exchange was soon after made. *M* did not keep himself informed with regard to the operations of the company and had no knowledge of the particular debt on which the suit was brought. The organization of the new company had been made in entire good faith and with intent to make it a legal corporation, and *M* supposed it to be so. The plaintiff had dealt with the company as a corporation and had not trusted the credit of *M* in the matter. Held that, even if the new company had not become a legal corporation, *M* had not made himself liable as a partner.

ASSUMPSIT against the defendants as partners under the name of The South Wilbraham Woolen Company; brought to the Superior Court in Tolland County. The facts were found by a committee, and judgment rendered for the defendants, (*Martin, J.*) Motions for a new trial and in error by the plaintiffs. The case is fully stated in the opinion.

*R. Hicks*, with whom was *R. D. Davidson*, in support of the motions, cited Thompson on Liability of Stockholders, § 120; *Rockwell* v. *Kellogg*, 19 Conn., 459; *Calhoun* v. *Richardson*, 30 id., 210; *Salmon* v. *Richardson*, id., 373; *Hill* v. *Beach*, 12 N. Jersey Eq., 31; *Fuller* v. *Rowe*, 57 N. York. 26; *Land Grant Railway Co.* v. *Coffey County*, 6 Kansas, 245; *Doubleday* v. *Muskett*, 7 Bing., 110, 115; *Maudslay* v. *Le Blanc*, 2 Car. & P., 409.

Stafford Bank *v.* Palmer.

*A. P. Hyde*, contra, cited *Fay* v. *Noble*, 7 Cush., 188; *Trowbridge* v. *Scudder*, 11 id., 83; *Blanchard* v. *Kaull*, 44 Cal., 440; *Haynes* v. *Brown*, 36 N. Hamp., 545; *Central City Savings Bank* v. *Walker*, 66 N. York, 424.

GRANGER, J.  The only question in this case is whether, under the facts found, George S. Moulton, one of the defendants, is liable in the suit.

The plaintiffs, in their first count, charge the defendant Moulton as a partner with certain other parties under the name of "The South Wilbraham Woolen Company," and allege that the defendants by their firm name executed the draft in suit, which was for $5,000, drawn upon W. W. Huntington & Co., of the city of New York, and payable to the order of the defendants by their firm name, and by them endorsed in the same name to the plaintiffs.  The common counts are added, and the last two counts are in tort, and allege that the defendants were stockholders in the Wilbraham Woolen Company, a corporation organized under the laws of Massachusetts, and that they with others on the 24th of March, 1876, fraudulently organized a pretended joint stock company under the laws of Connecticut, under the name of "The South Wilbraham Woolen Company," and by various false representations as to the legality and solvency of said corporation induced the plaintiffs to receive said draft. The facts in relation to the defendants' connection with these companies and the facts relating to the organization of the companies are found as follows:—

On the 3d day of September, 1874, a corporation was organized in the state of Massachusetts, pursuant to the laws of that state, under the name of The Wilbraham Woolen Company, with a capital stock of $45,000, which was invested in real estate and machinery situated in South Wilbraham, in that state, and other personal property.  The business of the company was the manufacture and sale of woolen goods. The original subscribers to its capital stock were W. W. Huntington, of New York City, $35,000, P. J. Cullen of Wilbraham and D. F. Lathrop of Tolland, in the state of

Massachusetts, each $5,000.   Subsequently Huntington trans-
ferred to Moulton $5,000 of the stock at its par value, and
the same amount to the defendant Palmer, and they became
the owners of the stock, and were the owners of it on the
24th of March, 1876.   At that date Huntington was presi-
dent, Lathrop secretary, and they and Cullen were the only
directors of the corporation.

On the 24th of March, 1876, a new corporation was formed
and organized under the joint stock laws of the state of Con-
necticut, under the name of "The South Wilbraham Woolen
Company," located in Coventry in this state, with a capital
stock of $45,000, which company succeeded to the property
and business previously owned and conducted by the Wilbra-
ham Woolen Company, and carried on the business in the
same place as before until August or September, 1877, when
the company failed, and became insolvent.   The South Wil-
braham Woolen Company were the drawers of the draft in
suit, and W. W. Huntington & Co., of New York, were the
acceptors.   W. W. Huntington died in August, 1877.   The
firm of W. W. Huntington & Co. was found insolvent.   This
firm had been the selling agents of the South Wilbraham
Woolen Company, and acceptances to the amount of $80,000
came back upon the company, which caused the failure.   The
South Wilbraham Woolen Company always professed and
assumed to act as a corporation and not otherwise, and it was
the *bonâ fide* purpose of all concerned in its organization to
make it a joint stock corporation.   The defendant Moulton,
it is found, "had no knowledge of the organization of the
Connecticut company at the time of its organization, nor of
any of its transactions, nor of the return of its officers, and
never attended any of its meetings, or had any notice of any
meeting, and never saw or knew anything with regard to the
records or books of the company till after its failure.   His
only connection with the company or knowledge of it was as
follows:—Before the new company was formed, in a casual
conversation with Mr. Huntington, the latter said that on
account of the more favorable laws of Connecticut relative to
the taxation of corporations they might wish to change so as

to bring it under the laws of Connecticut, to which Moulton made no reply or objection, because he did not consider it a proposal to make such change, but only as a future possibility. After the new company had been organized the secretary informed Moulton of the fact, and that if he would send his certificate of stock in the old Wilbraham Woolen Company he would send in return a certificate in the new company for the same amount. Moulton sent his old certificate, and received in lieu of it one in the new company for the same amount, $5,000, which he has ever since retained. He never paid anything for the new certificate except to surrender the old one, never authorized any one to pay anything for him, or knew that it had been done, and never knew in what form or mode the change was made. In August, 1877, shortly before the death of Huntington, Moulton wrote him, inquiring if there was to be any dividend in the new company. Moulton never agreed to become a partner with the others, or held himself out as such, under the name of The South Wilbraham Woolen Company, and never knew of, or authorized or approved, any representations made by the officers or agents of the company, whether fraudulent or otherwise, or had any knowledge of the making of the draft in question or of its discount by the plaintiffs till after the failure of the company." It also appears by the finding that Moulton never authorized, or approved, or had any knowledge of, the acts or transactions of the Wilbraham Woolen Company, or of the South Wilbraham Woolen Company, so far as such acts and transactions appeared by the books, records or certificates of the companies, till after the failure. The case also finds that there was no fraud on the part of the officers or directors of the companies, in their official statements or otherwise, regarding the value of the property, and that there was no fraud in fact in the organization of the new company. After the organization of the new company its articles of association, with the names of its stockholders, and the number of shares of each, was published, and the directors and officers of the plaintiff bank saw the same previous to discounting the draft, and although they relied upon the statements con-

tained in the articles, the draft was discounted mainly upon the credit of the acceptors, W. W. Huntington & Co., who were well known to the directors and officers of the bank, and were then considered abundantly responsible.    No representations were made, fraudulent or otherwise, by any of the officers or agents of the South Wilbraham Woolen Company nor by any of the defendants to induce the plaintiffs to discount the draft, nor did the defendants or either of them ever represent that they were acting as partners.    But all parties when the draft was discounted supposed that the South Wilbraham Woolen Company was duly organized as a corporation, and the plaintiffs dealt with them as such; and previous to and at the time of the discount the directors and officers of the bank knew that the real estate and machinery of the company were located in South Wilbraham, in the state of Massachusetts, that the goods of the company were sold in New York through W. W. Huntington & Co., and that the company kept only its office and books in Coventry.    After the failure of the company the plaintiffs entered into a composition deed with the company as a corporation, and before bringing this suit brought a suit upon the same draft against the company as a corporation, upon which they recovered judgment.    Fifty-six per cent. of the draft has been paid, and this suit is brought solely to recover the balance, the plaintiffs seeking to hold the defendant Moulton liable as a partner.

Under the facts as found can Moulton be held liable as a partner, or in any other character ?    That he cannot be held liable as a partner on the ground of any express contract to become such is too clear for argument.    If he is liable at all it is by reason of some rule of law that imposes this liability upon him by implication from the facts found.    The plaintiffs' claim is that the South Wilbraham Woolen Company was illegally organized, that the members therefore became a copartnership, and that Moulton was a stockholder in the company, and therefore liable as a partner.    That a joint stock corporation may be so defectively or illegally organized and conducted as to become an ordinary partnership and its members held liable under certain circumstances is undoubt-

edly true.   But the facts in this case do not warrant any such claim.   In order to make one man liable for the acts of others he must either directly or indirectly participate in the acts while they are being done, or must authorize or direct them to be done beforehand, or ratify and approve them afterwards. Now for the purpose of disposing of the main question in this case it is not necessary to decide, and we do not decide, whether the organization and management of the South Wilbraham Woolen Company was legal or not.   The pivotal inquiry is what had Moulton to do with it, and how did his connection with it affect the rights of these plaintiffs.   A brief answer to this question is, that he had nothing whatever to do with the organization or management of the company, and knew nothing of it until long after its organization, and his only connection with it then was to receive a certificate of stock in lieu of his old certificate in the company first organized.   This, and the single inquiry which he made about dividends, is his entire connection with the company.   Does this make him liable ?   The bare statement of the question is sufficient to bring an answer in the negative from every honest man.   What safety would there be for the innocent stockholders in any corporation, if by becoming such they became personally liable for the defaults or misconduct of its officers.   Stocks of all sorts would soon lose their market value, and money seek other channels for investment. Hence in our view it was of no consequence whether the company was legally organized or not, or what their acts and votes and records showed; Moulton could not be affected thereby under the facts found; he was entirely innocent of any participation in any wrong, if there was a wrong, and totally ignorant that any fraud was ever perpetrated or contemplated.   The court properly rejected all the evidence offered by the plaintiffs relating to this subject, as it had no relevancy under the first count in the declaration, and if it showed fraud or illegality under any of the other counts, Moulton could not be affected by it, he having taken no part in that matter.   But further, suppose the South Wilbraham Woolen Company was illegally organized, what damage has

resulted to these plaintiffs?    They have received all the benefits from the assets of the company that they could have received in any event.    So far as the facts show the affairs of the company have been honestly managed with the bonâ fide intention of making it at the outset and conducting it afterwards as a legal joint stock corporation.    The directors fully believed they had so done, and the plaintiffs with full knowledge of all the facts dealt with the company as a corporation, and not as a partnership, both before and after the failure, and never relied upon Moulton's connection with the company as any additional security for their claim.    In fact they relied mainly upon the acceptors for their security, so that in any event they have not been misled to their injury by any act or omission of Moulton.    All the transactions of the plaintiffs with the company were without his knowledge, and there is nothing in the case to show that he ought to have sought for information on the subject.

In the discussion of the case thus far we have treated Moulton as a stockholder of the South Wilbraham Woolen Company.    We think by his reception of the certificate, and holding it, he became thereafter a stockholder.    But he was not one of the original corporators, and took no part as the case finds in organizing it, and in fact did not know when or how the corporation was organized.    This state of things imposes no liability upon him to the plaintiffs in this case.

The following authorities fully sustain the foregoing views. *Fay* v. *Noble*, 7 Cush., 188; *Trowbridge* v. *Scudder*, 11 Cush., 83; *Blanchard* v. *Kaull*, 44 Cal., 440; *Central City Savings Bank* v. *Walker*, 66 N. York, 424; *Haynes* v. *Brown*, 36 N. Hamp., 545.

There is no error, and a new trial is not advised.

In this opinion the other judges concurred.