EMMA KLECKNER v. W. W. TURK ET AL.

FILED MAY 22, 1895. No. 6230.

1. **Corporations:** VALIDITY: COLLATERAL ATTACK. Where parties in good faith organized as a corporation and substantially complied with the conditions prescribed as precedent to the commencement of business by the law governing the formation of corporations, such as the adoption of articles of incorporation and filing the same with the county clerk of the county in which the business was to be conducted, and have entered upon the discharge of corporate functions and so continued for a considerable length of time, although if challenged by the state in a proper proceeding it might be declared illegal, such organization was not vulnerable to a collateral attack by a person who contracted with it in its corporate capacity and thus acknowledged and recognized its corporate existence, the object of such attack being to recover upon the contract, against the stockholders of the corporation individually, or to render them liable thereon as members of an unincorporated association or partnership.

2. **Statutes:** CONSTRUCTION: PENALTIES. A liability which is created by statute to follow as a consequence of the doing or omission of some act, and the extent of which is not measured ' or limited by the damage caused by the act or omission, is in the nature of a penalty and the statute penal in its character.

3. **Corporations:** PENAL STATUTES. The liability imposed by section 139, chapter 11, General Statutes, 1873, was for the omission to do acts not conditions precedent to the commencement of business by a corporation, and such liability existed solely by reason of the legislative enactment of such section and was in the nature of a punishment and consequently penal.

4. **Statutes:** PENALTIES. Section 136, chapter 11, General Statutes,

1873, was penal. *Globe Publishing Co. v. State Bank of Nebraska at Crete*, 41 Neb., 175, followed.

5. ———: REPEAL. Sections 136 and 139 of chapter 11, General Statutes, 1873, were repealed by an act approved April 6, 1891.

6. **Corporations:** LIABILITY OF STOCKHOLDERS. When an organization has become a corporation *de facto*, but failed to perform some requisitions of the law under which it was created, not conditions precedent to its beginning the exercise of corporate rights and powers, but essentials to its becoming a technical *de jure* corporation, its existence could not be collaterally attacked by persons contracting with it, in order to render the stockholders liable on such contract individually or as partners, but it was its duty to comply with the requirements of section 136, chapter 11, General Statutes, 1873, while in force, and its members will not be heard to allege its lack of a *de jure* character to avoid liability for failure to comply therewith.

7. **Statutes:** ABATEMENT OF ACTIONS. As a general rule, the repeal of a statute which confers the right to an action, the remedy provided existing solely by and through such statute, or the repeal of a penal statute, abates a suit pending to enforce the remedy provided or destroys any right of action which has accrued thereunder; but in states where a general saving clause has been enacted it enters into such repeal and renders it conditional or inoperative upon the law, inasmuch as it might affect accrued rights of action or pending suits.

8. **Constitutional Law:** STATUTES. The passage of a statute to operate as a general saving clause and which shall have the force and effect to continue rights and remedies unless a repealing statute contains an expression of the intention that such rights and remedies shall not be saved or continued, is within the power of the legislature.

9. ———: ———. The act of the legislature approved April 6, 1891, entitled "AN act to amend section 136 and section 139 of chapter 16, Compiled Statutes, 1889, and to repeal said original sections," is not unconstitutional on the ground that the subject-matter of the portion of the act, which makes its provisions operative as to actions pending or accrued, is not expressed in or not sufficiently stated in the title.

10. **Judgment:** TRIAL: PRACTICE. In a judicial district having two judges, Judge Bush heard and overruled a demurrer to a petition and defendants answered. During the trial of the cause, which was conducted by Judge Babcock, the defendants

objected to the introduction of any testimony on the ground
that the petition did not state a cause of action. This objection
was overruled. After the reception of the evidence Judge Bab-
cock instructed the jury to return a verdict for defendants, stat-
ing as a reason for so doing that the pleadings, evidence, and
law would not sustain a different verdict. *Held*, To be correct
practice, and not erroneous on the ground that it reversed the
ruling of Judge Bush upon the demurrer to the petition, as an-
other element entered into the consideration of the case by Judge
Babcock, viz., the evidence.

11. **Pleading**: AMENDMENTS: REVIEW. Amendments to plead-
ings should always be permitted when in furtherance of justice,
but their allowance rests largely in the discretion of the trial
court, and this court will not interfere with the exercise of such
discretion unless there has been an abuse of it.

ERROR from the district court of Richardson county.
Tried below before BABCOCK, J.

*Frank Martin* and *C. Gillespie*, for plaintiff in error:

Failure to publish the notice required by sections 130
and 131, chapter 16, Compiled Statutes, is a fatal defect;
without such notice there can be no valid incorporation;
it is a condition precedent to the creation of a valid corpo-
ration. (*Heinig v. Adams & Westlake Mfg. Co.*, 81 Ky., 300;
*Kaiser v. Lawrence Savings Bank*, 56 Ia., 104; *Clegg v.
Hamilton*, 15 N. W. Rep. [Ia.], 865; *Eisfeld v. Kenworth*,
50 Ia., 389; *Bigelow v. Gregory*, 73 Ill., 200; *Heuer v.
Carmichael*, 47 N. W. Rep. [Ia.], 1034; 1 Beach, Private
Corporations, sec. 12; *Abbott v. Omaha Smelting Co.*, 4
Neb., 423; *White v. Blum*, 4 Neb., 560; Cook, Corpo-
rations [2d ed.], sec. 234.)

The articles of incorporation are fatally defective in fail-
ing to state the "highest amount of indebtedness or lia-
bility to which the corporation shall, at any one time, be
subject, which must in no case exceed two-thirds of the
capital stock." (Compiled Statutes, ch. 16, sec. 128; *Heuer
v. Carmichael*, 47 N. W. Rep. [Ia.], 1034; Cook, Corpo-
rations [2d ed.], sec. 234.)

Plaintiff should have been allowed to amend her peti-
tion at the trial. The amendments asked were in further-
ance of justice. Section 144 of the Code has broadened
out the right of amendment so far, even after judgment,
that the denial of the right to plaintiff is alone sufficient
to reverse the judgment. (*Hale v. Wigton,* 20 Neb., 83;
*Berrer v. Moorhead,* 22 Neb., 687; *Brown v. Rogers,* 20
Neb., 547; *Ward v. Palin,* 30 Neb., 376; *Roberts v. Tay-
lor,* 19 Neb., 184; *Burlington & M. R. R. Co. v. Crockett,*
17 Neb., 570; *Catron v. Shepherd,* 8 Neb., 308; *Keim v.
Avery,* 7 Neb., 54.)

In a district where there are two judges their respective
rulings should tend to support each other's previous rulings
in cases tried. In this case Judge Bush had overruled the
demurrer to plaintiff's petition. At the trial Judge Bab-
cock directed the jury that the pleadings, evidence, and
the law would not sustain a verdict in plaintiff's favor.
This is a practice that cannot be tolerated. A ruling made
by one of the judges of the district must be respected by
the other, otherwise confusion and uncertainty will be the
result. (*Marvin v. Weider,* 31 Neb., 774.)

The plaintiff seeking to collect her debt from the defend-
ants as individuals is not estopped to deny the incorpora-
tion of the bank. (Cook, Stockholders [2d ed.] secs. 234,
283, 637; *Abbott v. Omaha Smelting Co.,* 4 Neb., 416;
*Garnett v. Richardson,* 35 Ark., 144; *Ferris v. Thaw,* 72
Mo., 446; *Hurt v. Salisbury,* 55 Mo., 310; 1 Beach, Pri-
vate Corporations, sec. 16; *Bigelow v. Gregory,* 73 Ill.,
197; *Indianapolis Mining Co. v. Herkimer,* 46 Ind., 142.)

The repealing act of 1891, repealing sections 136 and
139, chapter 16, is unconstitutional and void. Under our
law an ordinary repeal of the sections would have in no
manner affected the plaintiff's rights. (Compiled Statutes,
ch. 88, sec. 2.) The act was broader than its title, which
did not comprehend the retroactive effect which the law
was designed to have. It is obnoxious to the provisions of

section 11, article 3, of the constitution. (*City of Tecumseh v. Phillips*, 5 Neb., 305; *Messenger v. State*, 25 Neb., 674; *State v. Lancaster County*, 6 Neb., 474; *Holmburg v. Hauck*, 16 Neb., 337; *Touzalin v. City of Omaha*, 25 Neb., 817; *White v. City of Lincoln*, 5 Neb., 516.)

The repealing act is unconstitutional for the further reason that it seeks to impair the validity of the contract entered into between plaintiff and defendants, of which the law in force became a part, and that it seeks to destroy the vested right of plaintiff to recover her money from any of the defendants. (Constitution, U. S., sec. 10, art. 1; Constitution, Neb., sec. 16, art. 1.)   The liability sought to be enforced by plaintiff was not a penalty, and could not be taken away. (*Doolittle v. Marsh*, 11 Neb., 243; *Howell v. Roberts*, 29 Neb., 483; *Coy v. Jones*, 30 Neb., 798.)

*E. W. Thomas, R. S. Malony, J. H. Broady, Webster, Rose & Fisherdick,* and *W. E. Stewart, contra:*

The Farmers & Merchants Bank of Humboldt was a *de facto* corporation whose legal right to exist could not be questioned, except by the sovereign authority. (*Cory v. Lee,* 8 So. Rep. [Ala.], 694; *Snider's Sons Co. v. Troy,* 4 Am. R. & Corp. Cas. [Ala.], 25; *Lincoln Building Association v. Graham*, 7 Neb., 173; *Abbott v. Omaha Smelting Co.,* 4 Neb., 420; *Porter v. Sherman County Banking Co.,* 36 Neb., 271; 1 Beach, Private Corporations, secs. 13, 14; *Merchants Bank v. Stone*, 38 Mich., 779.)

The liability sought to be enforced is not contractual, but one imposed by statute and penal in its nature. (*Fay v. Noble*, 7 Cush. [Mass.], 188; *First Nat. Bank v. Almy*, 117 Mass., 476; *Stout v. Zulick*, 48 N. J. Law, 599; *Planters & Merchants Bank v. Padgett*, 69 Ga., 164; *Gartside Coal Co. v. Maxwell*, 22 Fed. Rep., 197; *Stokes v. Findlay*, 4 McCrary [U. S. C. C.], 205; *Whitney v. Wyman*, 101 U. S., 392; Taylor, Corporations, 148; *White v. Blum*, 4 Neb., 563.)

Rights and remedies given by statute are lost by uncon-
ditional repeal of the statute. (*Bennet v. Hargus*, 1 Neb.,
423; *Johnson v. Hahn*, 4 Neb., 146; Sedgwick, Construc-
tion of Statutory & Constitutional Law, 100; *Gregory v.
German Bank of Denver*, 3 Col., 332; *Sayles v. Brown*, 40
Fed. Rep., 8; *Breitung v. Lindauer*, 37 Mich.. 230;
Cooley, Constitutional Limitations [4th ed.], 152.)

*G. W. Cornell*, also for appellees:

The repealing statute is valid.   The saving clause is not
of itself a separate subject, but incidental to the matter
repealed.   The title need not set out the particulars of the
amendment.   It is sufficient that the subject is fairly ex-
pressed in the title. (*State v. Ream*, 16 Neb., 681; *Bonor-
den v. Kriz*, 13 Neb., 121; *Miller v. Hurford*, 13 Neb., 17;
*People v. Mahaney*, 13 Mich., 494; *People v. McCallum*,
1 Neb., 194; *State v. Babcock*, 23 Neb., 128.)

*Isham Reavis*, also for appellees.

HARRISON, J.

The plaintiff commenced this action to recover of the
defendants the sum of $6,052.53 and interest alleged to
have accrued thereon.   The petition states in substance:
"The said plaintiff complains of said defendants, and for
cause states that at the date of the written instruments or
obligatures hereinafter copied and set forth, and for several
years just immediately preceding said dates and for some
time thereafter, as hereinafter stated, the said defendants
were associated together and doing, operating, and conduct-
ing a general banking business in the city of Humboldt, in
said Richardson county, state of Nebraska, under the name
and style of the Farmers & Merchants Bank of Humboldt,
Nebraska, with said defendant Robert C. Lambertson, as
the cashier of said bank, authorized for and in behalf of
said defendants to receive deposits of money into said bank

and issue drafts or bills of exchange and certificates of deposits therefor."

What is denominated the first cause of action is an allegation of a deposit by plaintiff in the bank of $6,445, December 7, 1888, and the issuance to her by the cashier thereof of a certificate evidencing such deposit, it being, as is shown by the copy in the petition, what is generally known as a "time certificate," and payable in one year after date. There are three credits or payments pleaded, which are stated to have been received since the assignment of the bank. The second cause of action is predicated upon the purchase of a draft by plaintiff of the defendants through the cashier of the bank, in the sum of $200, drawn on the National Bank of Kansas City, and which, it is alleged was duly presented and not paid for want of funds belonging to the bank issuing it to meet it. Certain payments are stated to have been received and credited upon the draft, derived from the assets of the Humboldt bank since the assignment. It is further pleaded:

"4. The said defendants claim that their said bank was a duly incorporated bank under the laws of the state of Nebraska, under the name and style of the Farmers & Merchants Bank of Humboldt, Nebraska; that it was so organized and incorporated on or about the 1st day of July, A. D. 1879. The said corporation or bank of said defendants operated and conducted said bank as above from about the 10th day of July, 1879, to about the 29th day of June, 1889, when said corporation made an assignment, as an insolvent institution or corporation under the general assignment laws of the state of Nebraska, to the sheriff of said county.

"5. The said plaintiff alleges that from the organization of said banking corporation of said defendants, on or about July 10, A. D. 1879, to the said assignment, on or about June 29, A. D. 1889, the said defendants were stockholders and members of said corporation, and are still

so related and connected with the affairs of said assigned bank.

"6. The said plaintiff further alleges that at the time when said plaintiff deposited her said moneys in said bank, and at the times and dates when said indebtedness was contracted and said certificate of deposit or promissory note was delivered to said plaintiff as above stated, and when said draft or bill of exchange was made and delivered to this plaintiff as above stated, and for a long time before and ever since then, the said corporation or banking institution of defendants was insolvent."

Here follows a general allegation of the failure of defendants and their banking corporation "to comply with the laws of Nebraska regulating such corporations, and that by reason of such failure the defendants were rendered individually liable for debts contracted by the corporation, and also allegations of failures in particular, viz. : To publish notice of the organization of the banking corporation; to post up a copy of the by-laws of the corporation in a conspicuous position at the place of business for the inspection of the public; that for more than a year immediately preceding the transaction, as the result of which the liability from defendants to plaintiffs arose," the defendants and their banking corporation did not give an annual notice of all the existing debts of the corporation by publication of a statement in a newspaper, and by reason of the non-compliance in these instances specified the defendants became personally and individually liable for the payment of any debts contracted by the corporation, the bank. Motions to require the plaintiff to make her petition more definite and certain were filed and overruled, demurrers were then interposed which were also overruled. One defendant, Lambertson, elected to stand upon his demurrer and plead no further. The defendant Stuart filed his separate answer, which contained a general denial of the allegations of the petition and a statement that he never owned more than

one share of the stock in the Farmers & Merchants Bank
of Humboldt, and on or about April 10, 1887, in good faith
and for full value, sold, transferred, and delivered such stock
to Robert C. Lambertson, who was at the time the cashier
of the bank, and from said date the said Stuart had not pos-
sessed any stock in the bank and had no interest therein and
was not a stockholder at the time of the alleged transactions
between plaintiff and the bank. Mullen and Fergus an-
swered and admitted, and also averred, the incorporation
of the bank and its commencement of business under such
incorporation during the spring of 1879, and continuance
of the banking business for more than ten years and until
July, 1889; admitted that they were the owners of stock
of the bank; alleged lack of knowledge of the instruments
upon which plaintiff declared in her petition, but stated
that the draft was dishonored because not presented for
payment within a reasonable time; and after some other
and further statements of defenses, not necessary to be
noticed here, denied each and every allegation of the peti-
tion not expressly admitted. The defendants W. N.
Nimms and T. J. Frazer filed an answer, which was in
substance the same as that of Mullen and Fergus, a sum-
mary of which has just been given, except that it con-
tained no affirmative averment of the organization of the
bank as a corporation, they contenting themselves with ad-
mitting it. Frye in his answer averred the organization
of the banking corporation and the time it began business,
the length of time it continued therein, his ownership of
stock and sale and transfer of the same prior to the time of
the occurrences upon which the plaintiff's causes of action
are founded, and that he has never since such transfer had
any interest in the bank or its business, and after some
further allegations, which we need not notice, closed with
the usual form of general denial. A portion of a reply
filed by plaintiffs was, on motion, stricken out and an
amended reply filed, in which there was a denial of the

incorporation of the bank or that it ever became a valid corporation, and an allegation that "the said banking institution, and the said members claiming to be shareholders thereof, wholly and entirely failed and neglected to file a copy of the articles of incorporation of said banking institution in the office of the secretary of state in and for the said state of Nebraska, and no such copy of said articles of incorporation was ever so filed in said office of the said secretary of state as required by said laws." This was followed by a general denial of all the affirmative matter in the answer. There were also replies to the answers of Stuart and Frye, which were, so far as we care to notice them here, general denials.. A jury was impanneled and a trial had, and after the close of the evidence and a portion of the argument to the jury had been made by counsel, the court instructed the jury as follows: "The jury are instructed that the pleadings, the evidence, and the law will not sustain a verdict in this case against the defendants, or any of them. You are therefore directed to find a verdict in favor of defendants." The jury, in obedience to the directions of the court, signed and returned a verdict for defendants. A motion for new trial was filed for plaintiff, submitted, and overruled, and the case is presented to this court by plaintiff for review.

The aim of the plaintiff in this action, allowing the allegations contained in her pleadings to be its exponents, seems to have been threefold in reference to the liability which it was sought to establish against the defendants: First, a liability as unincorporated persons, or partners; second, a liability under a provision of the statute for failure to perform certain requisitions of the law in relation to the formation of corporations, not specifically set forth in the section of the statute, but referred to in general terms; third, the accountability provided by statute, arising from the non-performance of a duty specifically stated and required by the section fixing the liability for such failure.

The establishment of the first was dependent upon it appearing in the case that the parties were not incorporated and the bank had no corporate existence. It did appear that the defendants met and organized, elected officers, procured articles of incorporation to be drafted, which were adopted, filed, and recorded in the office of the county clerk of the county in which the bank conducted its business. The bank was then opened and commenced its operations and continued in the general banking business about ten years; and it was during this time, and near the close of it, that the transactions occurred upon which this action is primarily based. Section 126 of chapter 16 (Compiled Statutes, 1893) of our law in relation to corporations and their formation is as follows:. "Every corporation, previous to the commencement of any business, except its own organization, when the same is not formed by legislative enactment, must adopt articles of incorporation * * * and have them recorded in the office of the county clerk of the county or counties in which the business is to be transacted, in a book kept for that purpose;" and it is further provided in section 132 of the same chapter that the corporation may commence business as soon as its articles of incorporation are filed with the county clerk as required by law. It seems to have been contemplated by the lawmakers that the acts prescribed to be performed by the two sections of the law which we have just noticed must precede the commencement of the existence of the corporation as an organization.

"In this state the filing of articles of incorporation with the county clerk is a condition precedent to the existence of any corporate franchise. The law and the articles so filed, taken together, are considered in the nature of a grant from the state, and constitute the charter of the company," (*Abbott v. Omaha Smelting Co.*, 4 Neb., 416,) and in the body of the opinion in that case is the following: "I think, in order to establish such a corporation, it is neces-

sary to show user of a corporate franchise by an association of persons, though the organization may be so defective as to render the franchise wholly invalid in a proceeding against it by the state; or, in other words, it is necessary to show the existence of a charter, or some law under which the assumed powers are claimed to be conferred, and the user of the franchise claimed under such charter or law. In *Buffalo & A. R. Co v. Cary*, 26 N. Y., 77, it is said that 'If the papers filed by which the corporation is sought to be created, are colorable, but so defective that, in a proceeding on the part of the state against it, it would for that reason be dissolved, yet, by acts of user under such organization, it becomes a corporation *de facto*, and no advantage can be taken of such defect in its constitution, collaterally, by any person.'" In the case at bar the conditions precedent had been performed, and there had been a user of the charter thus acquired, for eight or nine years before the occurrences out of which this action arose, and in her contracts with the bank at that time unquestionably the plaintiff dealt with it as a corporation, fully believing it to be such and relying upon the corporation to pay the indebtedness created in her favor by the transactions, and without a thought or expectation of the stockholders being or becoming personally or individually bound thereby or any partnership liability arising therefrom, and she cannot now be heard to say that she made different contracts, with the defendants as partners, and not with the corporation. The defendants did not agree either with her or among themselves to be bound as partners or liable individually. It is just as clear that the plaintiff never intended to contract or supposed she contracted with the stockholders of the bank individually, and to hold the individual members of the company liable personally as partners would not only practically nullify the contracts which were actually made, but would in effect create and enforce new and different contracts which were never contemplated by the

parties.  "A very early case involving this principle is the
English case of *Henriques v. Dutch West India Co.*, 2 Ld.
Raymond [Eng.], 1535, decided about 1730, in which it
was held that 'where an action is brought by a corporation
they need not show how they were incorporated, for if the
name is proper for a corporation the name argues a corpo-
ration, and that the plaintiffs were estopped by their recog-
nizance to say there was no such company.'" (27 Am. Law
Rev., 211.)

In *Society Perun v. Cleveland*, 43 O. St., 481, in the
opinion written by Owen, J., it is said : "The theory that
a *de facto* corporation has no real existence, that it is a
mere phantom, to be invoked only by that rule of estoppel
which forbids a party who has dealt with a pretended cor-
poration to deny its corporate existence, has no foundation,
either in reason or authority.  A *de facto* corporation is a
reality.  It has an actual and substantial legal existence.
It is, as the term implies, a corporation. * * * Where
it * * * has been reputed and dealt with as a duly
incorporated body, and valuable rights and interests have
been acquired and transferred by it, no substantial reason
is suggested why its corporate existence, in a suit involving
such transactions, should be subject to attack by any other
party than the state, and then only when it is called upon
in a direct proceeding for that purpose, to show by what
authority it assumes to be a corporation."

In the case of *Gartside Coal Co. v. Maxwell*, 22 Fed.
Rep., 197, it was held: "Where persons, supposing in good
faith that they are incorporated and are stockholders in a
valid corporation, do business as a corporation for a series
of years, without the corporate existence being challenged
by the state, parties who deal with the company as a cor-
poration cannot hold the stockholders personally liable in
case they afterwards discover that the company was not
validly incorporated in consequence of some defect or
irregularity in the proceedings of the supposed incorpo-
rators."

There is no doubt that the state may attack the legality of the existence of any *de facto* corporation by commencing an action with that end in view against its individual members, and oust them from any user of corporate rights.  But persons who have contracted with a *de facto* corporation (for such was this bank), as did the plaintiff, and thus recognize and acknowledge its existence as a corporation, may not afterward be heard to deny its corporate capacity, and as to such person or persons, it may be said to be as if it were a corporation *de jure.*   We think this doctrine is supported by the greatest weight of authority. (*Globe Publishing Co. v. State Bank of Nebraska,* 41 Neb., 175; *Trumbull County Mutual Fire Ins. Co. v. Horner,* 17 O., 407; *De Groff v. American Thread Co.,* 21 N. Y., 124; *Hackensack Water Co. v. De Kay,* 36 N. J. Eq., 548; *Newburg Petroleum Co. v. Weare,* 27 O. St., 352; *Fresno Canal & Irrigation Co. v. Warner,* 14 Pac. Rep. [Cal.], 37, and cases cited in note; *Greenbrier Lumber Co. v. Ward,* 3 S. E. Rep. [W. Va.], 227, and cases cited in note; *Fay v. Noble,* 7 Cush. [Mass.] 188; *Butchers' & Drovers' Bank v. McDonald,* 130 Mass., 264; *Stafford Nat. Bank v. Palmer,* 47 Conn., 443 : *Commissioners of Douglas County v. Bolles,* 94 U. S., 104.)

Having reached this conclusion, it is clear that the plaintiff could not recover in this case against the defendants on the grounds that they were an unincorporated association, or partnership, and we shall now pass to the second branch of the suit, *i. e.,* that the defendants were personally liable because of the failure to comply with certain requirements with respect to the formation of the company.   The section of the statutes which it is claimed established the liability is as follows : "If any corporation fail to comply substantially with the provisions of this subdivision, in relation to giving notice and other requisitions of organization, the property of all the stockholders shall be liable for the corporate debts." (Sec. 139, ch. 16, Compiled Statutes, 1887.)   In the por-

tion of our law relating to corporations and their organization and creation, under which the defendants formed the company in this case, are several provisions, in which are stated certain things which must be done by a corporation, such as "notice must be published in some newspaper near the principal place of business for four weeks," and "a copy of the by-laws of the corporation, and the names of all the officers appended thereto, must be posted in some conspicuous place, at the place of doing business, subject to public inspection," and some others, the performance of each of which by the bank was negatived in the pleadings of the plaintiff in this action. These, while essential and necessary to be complied with in order to constitute the association of persons a corporation *de jure*, are none of them conditions precedent to the institution of business by the body corporate, and the neglect to comply with them, or either of them, would not entail upon the stockholders any further or special liability other than attached to them by reason of being stockholders, in the absence of statutory provisions fixing a liability for such non-compliance. If the conditions precedent to user of the corporate privileges and powers had not been fulfilled and a contract was made, the partnership or individual liability would be created, but after their fulfillment and user of the charter thus acquired, in the absence of statutory enactment providing for a liability on non-performance of these other and further requirements essential to establish a technical corporation *de jure*, none other than the regular liability of stockholders would exist. This being true, then the liability created by section 139, in so far as it relates and is given for the reason of a lack of the doing by the corporation of those things which were required of it to perfect its organization as a corporation *de jure*, and which were subsequent in point of time to its commencement of business and its right to so do by virtue of all conditions precedent having been performed, is not an enactment of a

liability which before existed or the common law liability, but is additional and entirely statutory in both origin and existence, and we have no doubt that this section of the statute, to the extent of its provisions, destroys the rule which we have discovered to be so prevalent and allows a person to whom a corporation is indebted to make what we think can scarcely be called a collateral attack upon the corporate existence of the organization but a recovery of a corporate debt in the manner and to the extent therein set forth, because of the omission to perform a duty or duties required. If this be true, then the question arises, is the liability contractual or penal? In a note to the case of *Cochran v. Weichers,* 2 Am. R. R. & Corp. Rep. [N. Y.], 382, we find the following quotation from section 908, 2 Morawetz, Corporations: "The statutes imposing this liability establish a new rule of private right,— a rule which, although unknown to the common law, may be founded on sound principles of justice and expediency. The only reason why this liability is called penal appears to be that it does not exist at common law, and is neither created by contract nor given as compensation for a direct and immediate wrong done by the directors to the creditors of the company." And in the same note on page 384 of the report cited, under the head of "Criterion for determining whether such statutes are penal or otherwise," it is stated: "It cannot be denied that a liability which is imposed upon a person as a consequence of the doing or omission of an act and which is not measured by any injury flowing from the act or omission, is in the nature of a punishment. A statute, therefore, which imposes such a liability does, in effect, inflict a penalty and is of a penal character. 'It is the effect, not the form, of the statute that is to be considered,' says the supreme court of Illinois, 'and when its object is clearly to inflict a punishment on a party for violating it—*i. e.,* doing what is prohibited or failing to do what is commanded to be done—it is penal in its character,

and the circumstance that, in punishing, a remedy is likewise afforded to those having an interest in the observance of the statute, is unimportant.' (*Diversey v. Smith*, 103 Ill., 378, 390.) * * * But, as we have already said, it is well settled by authority that certain statutes imposing upon stockholders or officers of a corporation a liability for the corporate debts are to be classed as penal statutes, with the same consequences as though they were penal in the strict sense of the term. So far as we are aware, all such statutes may be divided into two classes, those under which the liability is incurred as a necessary consequence of becoming a stockholder in the corporation, and those. under which the liability is incurred only as the consequence of doing or omitting some act specified in the statute. In the former class the liability partakes of the nature of a contract, to which the stockholder assents; in the latter, of the nature of a punishment. There is no logical basis for making any distinction between different statutes of the latter class. They differ in form and degree, but in substance and effect they are the same, and, if any are classed as penal statutes, all should be." Measured by these rules, which we believe to be correct, the section of our statutes under consideration (139) must be classed as penal. The liability given by sections 136 and 139 may be regarded in the nature of a penalty. (*White v. Blum*, 4 Neb., 563.) Section 139 was repealed by an act approved April 6, 1891, during the pendency of this action, and, as a general rule, the right to action given by it being one conferred solely by the statute, and penal, and not having been reduced to judgment before the repeal, the remedy would be abated or blotted out by such repeal. (*Bennet v. Hargus*, 1 Neb., 419; *Globe Publishing Co. v. State Bank, supra,* and cases cited; *Carr v. Risher*, 50 Hun [N. Y.], 147; *Union Iron Co. v. Pierce*, 4 Biss. [U. S.], 327.)

The remedy claimed in what we have designated the third branch of the case was afforded by the provision of

section 136 of chapter 16 of the statutes relating to corpo-
rations, as it existed at the time this suit was commenced.
This was also repealed by the act approved April 6, 1891,
during the pendency of the cause, and the remedy thereby
afforded, according to the general rule, was destroyed.
This section 136 was determined to be penal by *Globe Pub-
lishing Co. v. State Bank, supra,* and its unconditional re-
peal to be an abatement of the liability therein fixed.
There can be no doubt that, when viewed in the light of
the authorities above, the repeal of the two sections quoted
would carry with it all actions then pending, or rights of
action accrued to any persons by virtue of said sections and
not reduced to judgment; but it is insisted by counsel for
plaintiff in error that this repeal did not so operate, for the
reason that the act by which their repeal was affected was
obnoxious to the provisions of section 11, article 3, of the
constitution, wherein it is provided that no bill shall con-
tain more than one subject, and the same shall be clearly
expressed in its title; that the amending and repealing act
of 1891 was, in the substance of its provisions, broader
than the objects expressed in its title.    The title of the act
of 1891 is as follows: "An act to amend section one hun-
dred thirty-six (136) and section one hundred thirty-nine
(139) of chapter sixteen (16) of the Compiled Statutes of
1889, and to repeal said original sections."    (See Session
Laws, 1891, p. 198.)    Section 3 of the act contained the
repealing clause and stated: "That said original sections
one hundred thirty-six (136) and one hundred thirty-nine
(139) be and the same are hereby repealed."    Section 4
was the emergency clause, but seems to have been made to
serve a dual purpose; *i. e.*, to provide that the act take effect
immediately after its passage and approval and also to ren-
der its provisions applicable to any cause pending or to be
instituted.    It reads: "Whereas an emergency exists, this
act shall take effect from and after its passage and approval,
and shall be held and taken to apply in any case now pend-

17

ing or hereafter brought in any court in this state. Approved April 6, 1891." Judge Cooley, in his work on Constitutional Limitations (5th ed., p. 173), gives as some of the purposes of the provisions in constitutions in regard to titles of laws (for it is found in the constitutions of a large number of the states of the Union with some slight and immaterial variations, mainly in the wording; the general scope, spirit, and intent being the same in all) the following: "To prevent surprise or fraud upon the legislature by means of provisions in bills, of which the titles gave no intimation, and which might, therefore, be overlooked and carelessly and unintentionally adopted. To fairly apprise the people through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon by petition or otherwise, if they shall so desire." Judge Gardiner of New York says: "The purpose of the sixteenth section was that neither the members of the legislature nor the public should be misled by the title." (*Sun Mutual Ins. Co. v. Mayor of City of New York*, 8 N. Y., 241.)

. In order to more fully comprehend the matter under discussion it is proper here to notice another portion of our statutes. Section 2 of chapter 88, Compiled Statutes, 1893, which was passed and took effect during 1873, is as follows: "Whenever a statute shall be repealed, such repeal shall in no manner affect pending actions founded thereon, nor causes of actions not in suit that accrued prior to any such repeal, except as may be provided in such repealing statute." "The legislature has power to pass a general saving statute, which shall have the force and effect to save rights and remedies, except where the repealing statute itself shows that it was not the intention of the legislature that such rights and remedies should be saved. Though one legislature cannot bind future legislatures and each can make its laws prevail against any that exist, and its inten-

tion in that regard will be law, yet, as all legislatures are presumed to proceed with a knowledge of existing laws, they may properly be deemed to legislate with such provisions of a general nature in view." (Sutherland, Statutory Construction, section 226, and cases cited.) The general saving clause of our statute would have saved all actions pending under the provisions of the sections repealed, or causes of action not in suit, that accrued prior to the passage of the repealing act, if it had not been expressed in or clearly shown by the statute of 1891, which repealed sections 136 and 139, that it was not the purpose of the legislature that such pending actions and those accrued, but not in suit, should be preserved. (*Gilleland v. Schuyler*, 9 Kan., 569 ; *State v. Boyle*, 10 Kan., 113.) Our legislature did state in the act of 1891, by which the sections under consideration were repealed, their intention that it should apply to cases pending, or afterward brought, and the only question for us to determine at the present time is, whether or not the statements in the title included this object of the act as it is contended they must, in order to free the statute from any objectionable quality under the provision of the constitution invoked by counsel for plaintiff in error, and upon which the argument that the act is unconstitutional is based. It is a well settled rule that in order to justify a court in pronouncing a statute unconstitutional, it must clearly appear that it is so, and unless the act of 1891, or the portion of it which prevented the operation of the general saving clause of our law, was clearly within the mischief sought to be prevented by the constitutional provision, it must be upheld. While the title to an act of the legislature should fairly reflect the elements of the subject of the act, it need not be made an index to all of them that are connected with and incident to such subject. We think the portion of the act in question was sufficiently connected with and subsidiary to the main purpose of the law to bring it within the scope of

such purpose, and to make it germane to the subject-matter of the act; and if so, it was sufficiently expressed in the title. Moreover, we think the sections of chapter 88, *supra*, of which section 2 contained the saving clause, which were passed under the following title: "An act concerning the enacting and repealing of statutes," may be styled (and not inaptly), as were some similar provisions in Kansas, "A set of *quasi*-legislative by-laws," and as they are continually and generally in force and known, or presumed to be known, by the legislator and the public at all times, they could not be misled by the fact that such words were used in the body of the repealing act as made a repeal operative as to pending actions or accrued rights of action, without a specific statement in the title of the act that it would contain such a sentence. Furthermore, the saving clause embodies the authorization for the introduction of a statement in any repealing act which will destroy any effect the general saving clause would otherwise have, wherein it reads, "except as may be provided in such repealing statute," and it seems no more necessary that the appearance of such a statement in the repealing statute should be announced by its title than that the act will contain an emergency clause or provision as to the time it will take effect should be so announced. We conclude that the act passed by the legislature and approved April 16, 1891, entitled "An act to amend section 136 and section 139 of chapter 16, Compiled Statutes, 1889," is not unconstitutional for the reason urged by counsel.

In the judicial district in which the trial of this case was heard there were two judges, one of them (Judge Bush) heard the arguments on demurrers to the petition and overruled them. The trial was conducted by Judge Babcock, the other judge of the district. At the commencement of the introduction of the testimony the defendants objected to the reception of any evidence, on the ground that the petition did not state a cause of action. This was overruled,

Kleckner v. Turk.

and properly so, in strict compliance with the rule an-
nounced by the court in *Marvin v. Weider*, 31 Neb., 774,
in which it was held: "In a district where there are two
judges, a demurrer to an amended petition was overruled
by Judge B. and leave given the defendant to answer,
which he did.  Afterwards the cause came on for trial be-
fore Judge A., who sustained an objection to the introduc-
tion of any evidence, on the ground that the petition failed
to state a cause of action.  *Held*, Error.  That the ruling
of one judge upon a matter directly involved in the case is
binding upon the other, unless for cause it is set aside."
In the case at bar it appears that after the evidence was
closed, and after a portion of the arguments to the jury had
been made, the jury were instructed to return a verdict for
defendants, as the pleadings, the evidence, and the law
would not sustain a verdict against them or any of them.
To this the attorney for plaintiff excepted and assigned it
as error, arguing that it was holding that the plaintiff had
no cause of action, and in effect sustaining a general de-
murrer to the petition and reversing the ruling of Judge
Bush, who overruled such a demurrer, and was contrary to
the rule as stated in *Marvin v. Weider, supra*.  With this
we cannot agree.  Another element entered into the con-
sideration of the case by Judge Babcock, viz., the evidence,
and we think it was proper and his duty, if, in view of the
pleadings, the evidence, and the law applicable thereto, a
verdict for plaintiff could not be sustained, to direct the
jury to return a verdict as he did, and it was no violation
of the rule expressed in *Marvin v. Weider*, invoked by
counsel for plaintiff.

It appears that after the close of the testimony and some
arguments of counsel the trial judge announced that it was
his intention to instruct the jury to the effect as hereinbe-
fore quoted.  Counsel for plaintiff then made a motion by
which he asked to be allowed to amend the petition and
state therein specifically the insolvency of the bank and its

continuance in business after becoming so, and fraud in inducing the plaintiff to deposit her money therein. This motion the trial court overruled, and his action in refusing to allow such amendment is one of the errors assigned in the petition. The provisions of our Code in regard to amendments are very broad and liberal, and this court has announced repeatedly that they must be construed so as to give full operation to such liberal spirit and intent. The petition in this case was, as we have before stated, one to recover upon the contract liability of parties composing an alleged unincorporated association or partnership or upon an alleged twofold statutory liability of the stockholders of a corporation, and after trial of the issues to a jury, and it becoming apparent from the statements of the trial judge that there could be no recovery, leave was asked to so amend the petition as to make the right to recover sound in fraud; not to make the pleading conform to the evidence, for the court had, and we think correctly, upon objection being interposed to this class of testimony when offered, excluded it. Amendments in furtherance of justice should always be allowed, but whether they shall be permitted or not rests largely in the discretion of the court, and this court will not reverse a case for the refusal to allow amendments unless it appears there has been an abuse of such discretion, and we do not think there was any such abuse in refusing to allow the amendment in this case. (*Hedges v. Roach*, 16 Neb., 674; *Clarke v. Omaha & S. W. R. Co.*, 5 Neb., 318.) It follows from the views herein expressed that the judgment of the district court is

AFFIRMED.