## FLOYD v DU BOIS SOAP CO.

Ohio Appeals, 1st Dist, Hamilton Co

Decided Sept 15, 1941

Gatch, McLaughlin & Gatch, Cincinnati, for appellant.

Alton E. Purcell, Cincinnati, for appellee.

## OPINION

By MATTHEWS, PJ.

The appellant and appellee were engaged in interstate commerce on June 25, 1938, when the Fair Labor Standards Act of Congress became a law. Act of June 25th, 1938, c. 676, 52 Stat. 1060, 29 U.S.C.A. §201, et seq. The constitutionality of this Act was upheld in United States v Darby Lumber Co., 312 U. S. 100, 61 S. Ct. 451, 85 L. Ed. 609, 132 A. L. R. 1430. The appellee was an employee receiving a wage of $31 per week of 78 hours, and continued to so work until January 8, 1939, when his wage was increased to $33 per week of 78 hours. He was paid the stipulated wage.

This action is to recover for work in excess of the maximum work week as provided by that Act at the rate of one and one-half of the stipulated regular rate and a sum equal thereto as liquidated damages, and attorney's fee for services in the case.

The trial court divided the weekly wage by the number of hours of work to determine the regular rate and then multiplied the number of hours of over-time by one-half of that sum to determine the amount due for overtime and then added an equal amount as liquidated damages and rendered judgment for the total and allowed plaintiff's attorney a fee of $50 for services. It is from that judgment that this appeal was taken.

The validity of the judgment is challenged on two grounds:

(1) The first ground is that no state court has jurisdiction of a cause of action arising under the Fair Labor Standards Act of Congress.

By section 16(b) of that Act, it is provided that: "Any employer who violates the provisions of §6 (206) or §7 (207) of this Act (title) shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated, or such employee or employees may designate an agent or representative to maintain such action for and in behalf of all employees similarly situated. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C.A., §216 (b).

The language of this section is certainly broad enough to include all courts both state and federal upon which had been conferred jurisdiction of actions of that description. And there is no constitutional objection to state courts entertaining jurisdiction to enforce causes of action arising under the Constitution and laws of the United States. Indeed, unless Congress confers exclusive jurisdiction of the cause upon the federal courts, it is the duty of the state courts to uphold and enforce the federal law as the supreme law of the land. Claflin v Houseman, 93 U. S. 130, 23 L. Ed. 833,

and Robb v Connolly, 111 U. S. 624, 4 S. Ct. 544, 28 L Ed. 542.

But, it is said that Congress has conferred exclusive jurisdiction upon the Court of the United States in cases "for penalties and forfeitures incurred under the laws of the United States", U. S. Judicial Code, §256. 28 U.S.C.A. §371; 28 U.S.C.A. §41(9), and that plaintiff's action is one to enforce a penalty.

Congress has full power to limit jurisdiction of causes of action created by it to the federal courts and to exclude state courts from entertaining them, even though the jurisdiction conferred by the state law makes them appropriate for that purpose. It is, therefore, just a problem of determining the intention of Congress.

As we view it, the determination of whether this added liability would be considered a penalty in equity or in any case in which the distinction between compensation and penalties is important, or under the criminal law, is beside the point. In this statute, Congress has called it "liquidated damages" and has authorized any court of competent jurisdiction to enforce it. Congress avoided referring to the liability as a penalty. If it had done so, U. S. Judicial Code, §256, 28 U.S.C.A. §371, would have been applicable, and in the absence of any other Congressional expression would have conferred exclusive jurisdiction upon the federal courts. But Congress chose to call this added liability "liquidated damages" and to confer jurisdiction to enforce it upon any court of competent jurisdiction, without any restriction. It, therefore, appears to us that this liability is not a penalty or forfeiture within the meaning of §256 of the Federal Judicial Code, 28 U.S.C.A. §371.

It is our conclusion that the court of common pleas, being a court of general jurisdiction in both law and equity, was given jurisdiction of this cause by Congress in §16(b) of the Fair Labor Standards Act. This conclusion is supported by Forsyth v Central Foundry Co., 240 Ala.

277, 198 So. 706; Tapp v Price-Bass Co., 177 Tenn. 189, 147 S.W. 2d 107; Hart v Gregory, 218 N. C. 184, 10 S.E. 2d 644, 130 A.L.R. 265; Stringer v Griffen Grocery Co., Tex. Civ. App., 149 S.W. 2d 158; Hargrave v Mid-Continent Petroleum Corp., D.C., 36 F. Supp. 233; Campbell v Superior Decalcominia Co., D.C., 31 F. Supp. 663. See also, annotation to case of United States v Darby Lumber Co., 132 A.L.R. 1430, at page 1452, et seq., and Robertson v Argus Hosiery Mills, 121 F. 2d 285, 286, decided June 25, 1941, by the United States Circuit Court of Appeals, Sixth Circuit, in which the court answered the argument of jurisdiction based on §41(9), 28 U.S.C.A., by saying: "We are not in accord with this contention. The Fair Labor Standards Act * * * describes the additional equal amount * * * as 'liquidated damages'. Under familiar principles of law the conception of penalty is thus excluded from the provision. We see no reason for delving beneath this unequivocal term in order to spell out a meaning at variance with the intent expressed."

(2) The other question raised is whether the court used the correct formula in determining the "regular rate" per hour, as that phrase is used in §7(a) as applied to the express terms of this employment providing for compensation fixed by the week and not by the hour.

When the purpose of this Act is considered, the intention of Congress does not seem doubtful. That purpose was to fix a minimum wage and also a maximum work week. It is true that employment for a greater number of hours per week than that specified in the act is not expressly prohibited and penalized as a criminal offense. It is equally true that Congress has in express terms stated the maximum work-week compatible with the welfare of those engaged in interstate commerce, and of the public, and seeks to enforce it by the provision for compensation at one and one-half times the regular rate. Bowie v Gonzalez. 1 Cir., 117 F. 2d 11. Congress had the right to choose the means of enforcing its declaration

of public policy and was not confined to any one method. It could have enforced its policy either by positive fiat, or, as in this statute, by a less stringent method. Bunting v Oregon, 243 U. S. 426, 37 S. Ct. 435, 61 L. Ed. 830, Ann. Cases 1918A, 1043.

Therefore, in determining the regular rate per week under an employment by the week, we must consider that Congress has fixed the number of hours of work per week that is compatible with the general welfare. Work for a greater number of hours is incompatible with that general welfare and must be discouraged by requiring the employer to pay at the higher rate for all time in excess of the maximum. For this purpose, Congress has defined the work-week and no private convention contrary thereto can have any validity. The employment by the week was legal, and the provision for weekly compensation was also legal, and in accordance with the declared policy of Congress, but the provision for 78 hours of work, at the same rate of pay, was not. The parties must be considered as contracting for the statutory number of hours per week at ▮▮▮▮▮ ▮ the rate per week for that number of hours, at the rate determined by dividing the weekly compensation, i. e., $31, prior to January 8, 1939, and $33 thereafter, by 78, the number of actual hours which the employee worked per week, to determine the regular rate per hour. That is the basis used by the trial court, and we think it is the correct one. In no other way could the coercive effect of the provision for one and one-half times the regular rate for overtime be brought into operation as clearly intended by Congress. Judge Mack, the trial judge, so construed the act in a well-reasoned opinion, Floyd v Du Bois Soap Co., Common Pleas, 6 Ohio Sup. 76. 33 Abs 358. This conclusion is supported, among other cases, by Fleming v Carleton Screw Products Co., D.C. 37 F. Supp. 754; McLendon v Bewley Mills, 4 Wage & Hour Rep., 30 (in both of which colorable attempts to adjust a pre-existing weekly wage, so as to avoid

paying the increased pay for overtime was disregarded); St. John v Brown, DC., 38 F. Supp. 385 (in which the same court refused to make an allocation of the weekly wage for the same purpose); and Fleming v Pearson Hardwood Flooring Co., D. C. 39 F. Supp. 300.

For these reasons, the judgment is affirmed.

HAMILTON, J., concurs.

ROSS, J. (dissenting):

The majority opinion has set out in substance the nature of the action, pleadings, evidence, and judgment of the trial court.

There being no dispute of fact, only issues of law are presented. That involving the constitutionality of the act has been disposed of in favor of the act by United States v Darby Lumber Co., 312 U. S. 100, 61 S. Ct. 451, 85 L. Ed. 609, 132 A.L.R. 1430; Opp. Cotton Mills, Inc., v Administrator of Wage & Hour Div., 312 U. S. 126, 61 S. Ct. 524, 85 L. Ed. 624.

The next issue involves the jurisdiction of the court over the subject matter of the action.

Immediately, a number of problems arise demanding alternative disposition. Section 256, U. S. Jud. Code, 28 U.S. C.A. §371, provides in substance that in all actions involving the application of penalties provided by acts of Congress the Federal Courts have jurisdiction exclusive of the State Courts.

Two questions now are presented: Does the Fair Labor Standards Act (Act of June 25, 1938, c. 676, 52 Stat. 1060, U.S.C.A. title 29, §201 et seq.) impose a penalty? If so, does such act also modify the limitations of the penalty section, supra, and now permit or require state courts to entertain jurisdiction of actions predicated upon The Fair Labor Standards Act?

If the language of the latter Act, giving it an ordinarily reasonable interpretation, imposes a penalty, the fact that such penalty may be called "Liquidated Damages" is ineffective to alter the fact that a penalty is provided.

The question is not what Congress intended to do, or of determining the

intention of Congress; the question presented is what did Congress do—giving the language used a fair and reasonable interpretation? In the case of **Bloechle et v Davis et, 132 Oh St 415,** at page 419 of the opinion, 8 N. E. 2nd 247, at p. 249, the Supreme Court said: "In construing a statute a court will seek to ascertain what the Legislature intended by what it enacted and not what it intended to enact. **37 O. Jur. 525, §281.** Statutory omissions of provisions, if they occur, will be presumed to have been intentional rather than accidental; but whether intentional or accidental, courts are without power to supply what the Legislature omitted. **37 O. Jur. 500, §271.** Courts declare what the law is not and what the law ought to be."

The Fair Labor Standards Act provides for the recovery of a sum equivalent to the deficiency created by the failure of the employer to comply with the mandate as to time and a half provisions. Congress has termed such additional element of recovery "Liquidated Damages".

A "penalty" has been defined by the Supreme Court of Ohio as being "a sum of money exacted by way of punishment for doing some act which is prohibited, **or omitting to do something which is required to be done."** (Bold face not in text.) **Toledo, Columbus, etc., Rd. Co. v Miller, 108 Oh St 388, 397,** 140 N.E. 617, 619.

It is interesting to note that in this case the Supreme Court construed what was termed a "fine" in a city ordinance to be a "penalty".

"A penalty, on the other hand, is the punishment. generally pecuniary, inflicted by law for its violation. It has no reference to actual loss sustained by him who sues for its recovery." 21 R. C. L. 208, §2. And again, in the same section, page 206: "But they are also commonly used as including an **extraordinary liability** to which the law subjects a wrongdoer in favor of the person wronged not limited to the damages suffered." (Bold face not in text.) In support of this statement are cited **Huntington v Attrill, 146 U.S. 657, 13**

S. Ct. 224, 36 L. Ed. 1123, and O'Sullivan v Felix, 233 U. S. 318, 34 S. Ct. 596; 58 L Ed. 980. Again, on page 207, it is stated: "A penalty is that which is demanded for the violation of a statute which may or may not be a crime."

In Bourne v Baer, 107 Neb. 255, 185 N. W. 408, 409, in which the Supreme Court of Nebraska held that "A liability which is created by statute to follow as a consequence of the doing or omission of some act, and the extent of which is not measured or limited by the damage caused by the act or omission, is in the nature of a penalty and the statute penal in its character." Citing Kleckner v Turk, 45 Neb. 176, 63 N. W. 469.

In Agudo v Monterey County, 13 Cal. 2d 285, 89 P. 2d 400, 402, the Supreme Court of California defines and distinguishes a "penalty" as follows: "In this state a statutory penalty has been frequently defined as 'one which an individual is allowed to recover against a wrongdoer, as a satisfaction for the wrong or injury suffered, and without reference to the actual damage sustained.' " Citing Los Angeles County v Ballerino, 99 Cal. 593, 32 P. 581, 34 P. 349.

See also: Noble v Martin, 191 Wash. 39, 70 P. 2d 1064.

In Allen v Petty, 58 S. C. 240, 36 S. E. 586, double amount for usury was held to be a penalty.

A penalty of bond against sale of liquor to minors—to be recovered as liquidated damages, held to be a penalty in Johnson v Rolls, 97 Tex. 453, 79 S. W. 513.

Act against pools, trusts, and monopolies—the recovery of the amount paid held penalty not liquidated damages. Mason v Adoue, 30 Tex. Civ. App. 276, 70 S. W. 347.

A forfeited redelivery bond upon which a judgment was taken held to be for penalty and abates with death of original debtor. United States v Theurer, 5 Cir., 213 F. 964.

In Fite v Lander, 52 N. C. 247, 7 Jones' Law 247, the Supreme Court in construing a statute providing for "stipulated damages" held the same to pro-

vide for a penalty which abated with the death of the violators of the act.

In State v Schuenemann, 18 Tex. Civ. App. 485, 46 S. W. 260, the court there considered a statute providing for traffic in intoxicating liquor, and permitting one aggrieved by its violation to institute an action stating "and such person shall be entitled to recover the sum of five hundred dollars as **liquidated damages** for each infraction of the condition of such bond." The court held that this act provided for a penalty.

This Texas case is cited in United States v Joles, D. C. Mass., 251 F. 417, 418, in which the second paragraph of the syllabus is: "Whether or not an action is for a penalty or forfeiture depends on the **character** of the liability sought to be enforced. If it is to recover compensation for a loss sustained by plaintiff it is not, but if the sum claimed has no relation to any such loss, but is arbitrarily exacted for some act or omission of defendant, the action is essentially penal."

Now the Fair Labor Standards Act creates, first, a debt due from employer to employees for time and a half pay for hours in excess of the maximum period. How is the employee damaged by failure of the employer to pay such debt otherwise than to the extent of the sum so created by statute as a debt? The statute permits the recovery of reasonable attorney's fees, so that this element, not recognized in Ohio as ordinary damages, may be recovered. Certainly, the equivalent sum has no reference to or logical connection with anything connected with or involved in the creation of the debt. It is manifestly a penalty imposed for the failure to promptly comply with the act and pay the employee time and one-half overtime. Such being the nature of this added sum, it cannot be considered as damages, liquidated or otherwise, but, on the contrary, is a penalty imposed upon the employer for failure to comply with the terms of the Act. The fact that it is termed "liquidated damages" makes it neither liquidated nor damages. It is purely a penalty.

In determining whether a statute of Ohio imposed a penalty, the Supreme Court in the case of **Board of Commissioners of Champaign County, Ohio, v Church, etc. Admr., 62 Oh St 318, at page 345,** 57 N. E. 50, 52, 48 L. R. A. 738, 78 Am. St. Rep. 718, say: "The primary purpose of the legislature was punishment and correction The expressed object of the law is 'the suppression of mob violence'. That the legislature might, in the exercise of the police power, fix the amount of a penalty without the intervention of a jury, was long ago decided by this court in (**Cincinnati, Sandusky & Cleveland) Railroad Company v Cook, 37 Oh St 265.** And, this being so, it is of no concern to the party paying the penalty, to whom the state, in its sovereignty, may pay it. It may well, as under this statute, turn the money over to those who suffer by the act of lynching. In this respect it makes no difference whether in the statute it be called penalty, or compensation, or damages. Nor does it alter the case that the amount is fixed—that is, determined—by the statute, as in this case, or that it is to be found by a jury. Nor yet does it matter that it is declared to be 'for the suppression of mob violence', as in this case, or 'for compensating parties whose property may be destroyed in consequence of mobs or riots,' as in the statute which was upheld in Darlington v Mayor, etc., 31 N. Y. (164), 187, (88 Am. Dec. 248); because the imposition of any amount by authority of the state is, in either case, essentially penal and corrective in its nature. The party paying the money so recovered—that is, as a penalty—has no right to complain that the sovereign pays it over to the person injured, or pays it for the benefit of the minor children of a person suffering death by lynching, or to the next of kin of such person; nor that the sovereign provides that 'such recovery shall not be regarded as a part of the estate of the person lynched, nor be subject to any of his liabilities.' Nor is it a matter which can be put in issue for trial by jury; for the legislature does not au-

346

thorize nor attempt a compensation of the injury according to the measure of the injury, to be settled on an inquiry of damages."

In United States v La Franca, 282 U. S. 568, 51 S. Ct. 278, 75 L. Ed. 551, the Supreme Court of the United States determined that although Congress termed a penalty a tax, it was none the less a penalty. At page 572 of the opinion in 282 U. S., at page 280 of 51 S. Ct., 75 L. Ed. 551, the court say: "Of the four items involved, two unmistakably are penalties, and are so denominated. The other two, notwithstanding they are called taxes, are in their nature also penalties. Putting aside for later consideration the item of $4.68, we consider, for the present, only the other three items."

In Goodstein v Board of Mississippi Levee Com'rs., 153 Miss. 783, 121 So. 856, the Supreme Court of that State reached a similar conclusion in considering a statute of the state. At page 790 of the opinion in 153 Miss. at page 857 of 121 So., the court say: "The principal argument at the bar is addressed to the question whether the quoted statute imposes a penalty or simply a tax. In the civil sense, a statutory penalty is a pecuniary punition imposed by statute for doing some act which is prohibited, or for omitting to do some act which is required to be done. In the popular mind, the idea of a penalty is always present when a certain regular tax is laid, and is coupled with a requirement that it shall be paid on or before a definite time, and a much larger or greatly increased tax is exacted in default of payment on or before the said certain time, even if the default be but for a day. There is a default, and a greatly increased exaction follows as a result—there is a penalty for the default. And this popular idea is accurate enough in point of law, so far as concerns the case and the statute here being considered. It is true the statute denominates the greatly increased payment, when paid after removal, as a tax; but the determination of the question whether a statute imposes a penalty is not con-

trolled by the name or designation which the Legislature has given to it, nor by the fact that the legislative act may describe it as a further sum or an additional tax, or simply a tax, if it is yet greatly in excess of the amount of the regular tax and is imposed by reason of the default of the tax debtor. The intrinsic nature of the exaction will control, and it will be regarded as a penalty when by its very nature it is a penalty. 21 R. C. L. p. 210; Helwig v United States, 188 U. S. 605, 23 S. Ct. 427, 47 L. Ed. 614."

In Forsyth v Central Foundry Co., 240 Ala. 277, 198 So. 706, the Supreme Court of Alabama in construing the Fair Labor Standards Act apparently concluded that the Act in question did impose a penalty, but concluded that Congress thereby intended to abrogate the application of the penalty section to actions under the Fair Labor Standards Act. At page 709 of the opinion in 198 So. the Court say:

"The particular meaning to be given those terms (penalty or penal acts) depends upon the circumstances and what purpose was in view. Strictly and primarily, a penalty denotes a punishment imposed and enforced by the state for an offense against its laws. But commonly speaking, it includes any extraordinary liability to which the law subjects a wrongdoer in favor of the person injured, not limited to the damages suffered. Statutes sometimes give a private action for the recovery of a penalty, where a private right has been invaded; but, strictly speaking, such is not a penalty as known to common law. Huntington v Attrill, 146 U. S. 657, 13 S. Ct. 224, 36 L. Ed. 1123; 21 R. C. L. 206, 207; 25 C. J. 1178, 1179.

"It is sometimes said that a penalty is in effect a security for performance, while an amount to be paid as liquidated damages is a sum to be paid in lieu of performance. See 17 C. J. 933. In this Act Congress provides for what it calls 'liquidated damages'—presumably it knew the distinction.

"It may be that this right of recovery is no more in the nature of liquidated damages than the right to recover twice the amount of illegally paid interest to a national bank. It may also be that Congress cannot by declaration change the nature of a claim to one for liquidated damages when it is but a penalty. But when Congress does that very thing, though it is but a penalty, Congress manifests an unmistakable purpose to exclude it from the operation of a statute which applies to penalties and not to a claim for liquidated damages."

Even in Robertson v Argus Hosiery Mills, Inc., 121 F. 2d 285, 286, in which the Circuit Court of Appeals, Sixth Circuit, passed upon this instant question, Allen, Judge, summarily dismisses this problem with this statement: "We are not in accord with this contention. The Fair Labor Standards Act, the pertinent provisions of which are printed in the margin, describes the additional equal amount for which the employer shall be liable as 'liquidated damages'. Under familiar principles of law the conception of penalty is thus excluded from the provision. We see no reason for delving beneath this unequivocal term in order to spell out a meaning at variance with the intent expressed." No. 8657, decided 6-25-41.

It can make no difference whether the court is considering a constitutional limitation or the application of a former Act. If Congress provided for a penalty, then it is such no matter what it may be termed.

Reference to the section of the Fair Labor Standards Act shows the section to be headed "Penalties".

Such being the case, unless the latter Act then specifically modifies the terms of the penalty Act supra, the former Act is controlling and the Federal Courts have exclusive jurisdiction of the subject matter of this action.

It would seem obvious that no such modification was provided by the Act or even intended by Congress, since that body carefully refrained from the use of the word "penalty" in the Act itself. If Congress had intended to modify the application of the penalty section, it seems that it could easily have used the terms which would have unequivocally produced such result. It is stated that it did so—by stating that the action to recover by the employe could be maintained "in any court of competent jurisdiction". It must be presumed that Congress knew when this act was made a law that by its own acts it had limited actions for penalties to the Federal Courts, and that those courts and those courts alone could entertain actions for penalties and were "courts of competent juristion".

By using the term "liquidated damages", it is apparent that Congress not only did not intend or desire to modify the earlier penalty section, but sought to studiously avoid its application. It did not meet the provisions of the earlier act, or even indirectly or inferentially modify them—it stepped aside from such provisions, or rather attempted to do so. It cannot be stated that Congress modified an earlier act which it carefully refrained from involving.

As a result, Congress passed an Act imposing a penalty for its violation, it then provided that any court of competent jurisdiction should have jurisdiction to enforce such penalty in fafor of an employe. Again, it must be presumed that Congress knew that at the time of the enactment of such Act, the only courts of competent jurisdiction to enforce a penalty were the Federal Courts. If the contention be tenable that it did not intend to impose a penalty, then the plaintiff is met with the situation that it did so and consequently Congress could have had no intention about modification whatever, for it did not consider the earlier penalty section applicable, and consequently not involved in its consideration of the subject-matter of the Act. Under such circumstances, there could be no direct, indirect, or inferential modification of the earlier penalty section which applies directly to the instant action, and bars the Courts of the State from entertaining such ac-

tion for the recovery of a penalty imposed by an act of Congress.

The trial court, not having had jurisdiction of the subject matter of the action, committed error in failing to dismiss the petition.

This conclusion renders unnecessary any consideration of the merits of the plaintiff's claim that the employer has violated the provisions of the Fair Labor Standards Act, and any expression of opinion upon such contention would be mere surplusage.

The petition of the plaintiff should be dismissed. His action under the Fair Labor Standards Act, if maintainable, should be brought in the Federal Courts.