## CAMFIELD v. WEST TEXAS UTILITIES CO.
### No. 4204.

Court of Civil Appeals of Texas.   El Paso.
June 11, 1942.

Rehearing Denied Oct. 8, 1942.

T. R. Johnston, of San Angelo, for appellant.

A. K. Doss, of Abilene, and Collins, Jackson, Snodgrass & Blanks, of San Angelo, for appellee.

PRICE, Chief Justice.

This is an appeal from a judgment of the district court of Tom Green County. The trial was before the court with a jury. At the close of plaintiff's testimony the court instructed a verdict in favor of defendant, and plaintiff has duly perfected appeal therefrom.

The suit was under 29 U.S.C.A. § 216, section 16 of the Fair Labor Standards Act of 1938, to recover time and a half for overtime and attorney's fees; the period involved from October 24, 1938 to August 25, 1940; the amount of overtime alleged, something over 300 hours, for which plaintiff alleged he was due 78 cents per hour under the terms and provisions of the Fair Labor Standards Act.

Defendant's defense, generally speaking, was that the said Act did not apply to plaintiff's activities under his employment, in that plaintiff neither was engaged in commerce nor in the production of goods for commerce.

Plaintiff's cause of action was governed by the Fair Labor Standards Act of 1938 and he relied thereon. 29 U.S.C.A. §§ 201–219. The effective date of that Act was October 24, 1938, and the period during which overtime was sued for was the period elapsing between that date and the date of plaintiff's discharge on August 25, 1940.

That a state court has the jurisdiction to enforce the civil provisions of this Act contained in sec. 216 seems to be well settled. Stringer v. Griffin Grocery Co., Tex.Civ.App., 149 S.W.2d 158; Floyd v. DuBois Soap Co., Ohio App., 38 N.E.2d 919; Adair v. Traco Division, 192 Ga. 59, 14 S.E.2d 466.

■ This Act has been held constitutional by the Supreme Court of the United States.

United States of America v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430.

Sec. 206, 29 U.S.C.A. provides:

"(a) Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates—

"(1) during the first year from the effective date of this section, not less than 25 cents an hour,

"(2) during the next six years from such date, not less than 30 cents an hour."

Sec. 207 of the Act provides:

"(a) No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce—

"(1) for a workweek longer than forty-four hours during the first year from the effective date of this section,

"(2) for a workweek longer than forty-two hours during the second year from such date, or

"(3) for a workweek longer than forty hours after the expiration of the second year from such date,

unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Sec. 216, subsection b: "Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. * * * The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

Sec. 203, subsection b, provides: " 'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof."

Subjection j: " 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State."

The constitutional power upon which this Act is founded is, of course, the commerce clause of the United States Constitution. By the very terms of the Act, plaintiff, in order to recover thereunder, must show either that he was engaged in commerce within the meaning of the Act, or in the production of goods for commerce.

■ It would seem that if an employee was engaged in commerce, that is, interstate commerce, his employer would likewise be. However, this is not necessarily true as to the clause providing for "production of goods for commerce."

Plaintiff, beyond any question, was employed by the defendant from October 24, 1938 to August 25, 1940. In such an employment during such period his overtime exceeded 340 hours, if to be measured by the article in question.

There was evidence that defendant now is and was during the period of plaintiff's employment, engaged in the generation, transmission and sale of electric power. Part of this power so generated by defendant was transmitted to customers located at points without the State of Texas, part was delivered to customers in the State of Texas. The relative amount of power so generated and consumed in Texas and that generated in Texas and used ouside of the State does not appear.

Some of defendant's customers, such as telegraph companies and radio companies, bought electric power generated by defendant in Texas and used same in transmission of telegraph messages and radio programs outside of the State of Texas.

Defendant in the transaction of its business used at least two plants situated in the State of Texas, one located in the City of San Angelo, the other near the City of Quanah. The San Angelo plant had a capacity of something like 33,000 Kilowatts, that of Quanah of something like 15,000 Kilowatts. There was evidence that from the Quanah plant defendant transmitted electrical energy to a power company situ-

ated in Oklahoma; that from time to time, if for any reason the plant at Quanah was unable to supply the needs of its customer in Oklahoma, that the plant at San Angelo was used for this purpose. The wires and transformers, etc., were so arranged that electrical energy could be transmitted to Oklahoma from either plant.

Plaintiff was employed at the San Angelo Plant most of the relevant time as assistant to the engineer at the power plant and other times as a "handy-man." His work was in connection with the generation and transmission of electrical power. He testified that W. E. Huss had charge of the plant and he received his instructions from him. "Huss would tell me when to come to work and if not he would send a man to tell me. He would say, 'We have to go on the line with Quanah load, or the Oklahoma load.' By load I mean the electricity or Kilowatts." He testified, on cross-examination we presume, "Chief Huss would tell me we had to pick up the Quanah load, and he told me that only four or six times during the year. For the period of not quite two years between October 24, 1938 and August 24, 1940, Chief Huss told me four to six times to come down, that he was going to pick up the Quanah load. It is approximately correct that during that two-year period Mr. Huss told me four to six times to come down, that they were going to pick up the Quanah load. I would not attempt to fix any one week when he told me that without looking at the time sheet, but I can take my reported time and do that. In the two-year period involved I could not tell you even a month when Mr. Huss told me he was going to pick up the Quanah load, or the Oklahoma load. * * * I never paid much attention to the time this plant carried the Quanah load; it may have been an hour or two, or it might have been six or eight hours."

Defendant's manager testified that he was manager of defendant's business in San Angelo, he couldn't say how many counties it served, but he thought approximately thirty-seven or thirty-eight; "in those counties we sell electricity to everyone who wants to purchase it. The West Texas Utilities Company is interconnected with other utilities, and the only company we are connected with is the Central Power & Light; I do not think the Oklahoma Power & Light, but believe the Southwestern is."

We take it that it is fundamental that the transmission of electrical power from one state to another constitutes interstate commerce. It follows, we think, from this that one employed to assist in the generation and transmission of electricity from one state to another is "engaged in commerce," within the meaning of the statute in question.

We are further of the opinion that an employee engaged in the State in the generation and transmission of electrical power to a customer such as a telegraph company, who utilizes same in part to transmit messages without the State, is not engaged in interstate commerce. We do not believe that the generation of the electricity for the purpose of such use constitutes the "production of goods for commerce."

It is not the electrical energy that is resold by the customer. The customer sells the service in which he utilizes such power. This is not on the theory that electrical energy is not "goods" within the meaning of the statute in question.

As we have stated, plaintiff was employed in interstate commerce during the time he assisted in the generation and transmission of electrical energy utilized beyond the boundaries of the State of Texas. During the time his services were confined to the generation and transmission of electrical power solely in Texas his employment was in intrastate commerce.

The question, then, tendered by this appeal is, first, does the Fair Labor Standards Act apply to his entire activities during his period of employment on account of his being engaged part of his time at least in interstate commerce? If this be answered in the negative, then, is the burden upon him to show how much of the overtime involved accrued when his employment was in interstate commerce?

The case of United States of America v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430, before the Supreme Court, was an appeal from an order of the United States District Court quashing an indictment wherein the defendant was charged with forwarding in interstate commerce goods produced for commerce by employees not paid the wages made mandatory by the Fair Labor Standards Act. The defendant, according to the indictment, was engaged in Georgia in acquiring raw material, manufacturing same into finished lumber, with the intent when manufactured

tó ship it in interstate commerce and within fact shipping a large part of same outside the State. It was not held that so assembling and processing the lumber was interstate commerce. It was held, however, that under the commerce clause, the Congress had the power to make the acts charged a penal offense, and had done so by the Act in question.

By inference, we think it is authority for the proposition that Congress might extend its power over purely intrastate commerce where the regulation thereof is reasonably necessary or appropriate to the regulation of interstate commerce,—might, we take it, where it is necessary, in the furtherance of the regulation of interstate commerce as to wages and hours, regulate intrastate commerce. In fact it was not held that the assembling and processing of the lumber in Georgia was interstate commerce. It clearly was not.

It is possible, we think, for an employee at the same time to be engaged, within the meaning of the act in question, in intrastate and interstate commerce. This case might afford an instance. Take the time that the Quanah plant was not in operation. Part of the current, no doubt, was consumed and utilized wholly within the State of Texas, part of that same current was transmitted by the same continuous operation to Oklahoma, where it was utilized. Take, for instance, a watchman who guards goods, part of which are to be forwarded in interstate commerce, and part of which are intended for intrastate commerce. It is impossible to separate the quality of the activity on any logical or satisfactory basis.

In cases such as the two last illustrations it could with great logic be contended that the wage and hour standards apply to the entire activity. Hart v. Gregory, 218 N.C. 184, 10 S.E.2d 644, 130 A.L.R. 265.

Here, however, the evidence seems to indicate that from the San Angelo plant current was supplied to Oklahoma only occasionally. Let us, then, grant that during the time current was so supplied·to Oklahoma, plaintiff was engaged in interstate commerce. We think the same principle would apply if his activities be characterized as "producing goods for commerce."

.If we hold that while during the time the San. Angelo plant was actually engaged in supplying the Oklahoma customers and plaintiff assisting therein that he was employed in interstate commerce, then the time that he was so engaged in one activity or the other might by evidence be definitely ascertained. There were two distinct and separate departments of the business of defendant.

So far as we have been able to find, the United States Supreme Court has as yet not construed the Act in respect to the segregation of the activities of an employee with reference to the Fair Labor Standards Act. In this respect it has been before the United States District Courts over the United States a number of times. The holdings are by no means uniform. In 132 A.L.R. 1443, there is an exhaustive note on the act in question which brings out the various conflicts in the district and circuit courts of appeals of the United States in construing same. Pursuing the matter further in the late supplements of the American Digest, the confusion and disagreement among the Federal Courts is but emphasized.

It has been held that an employer may have employees some of whom are engaged in interstate commerce, others engaged purely in intrastate activities bearing no relation to producing goods for commerce. In such a case, the Act in question applies to the former employees but not to the latter. Foster v. National Biscuit Co., D.C., 31 F.Supp. 552; Baggett v. Henry Fischer Packing Co., D.C., 37 F.Supp. 670.

Likewise it has been held that an employee engaged in work which in part is covered by the Act and part not, in order to recover for overtime, must show the overtime was in the employment covered by the Act. Prescription House v. Anderson, D.C., 42 F.Supp. 874; Duncan v. Montgomery Ward & Co., 42 F.Supp. 879.

But it has been held that where an employee worked interchangeably in a department of a business involving intrastate business and another involving the production of goods for commerce, that the Act applied to his entire activity. Fleming, Adm'r, v. Knox, D.C., 42 F.Supp. 948.

In the case of Super-Cold Southwest Co. v. McBride, 124 F.2d 90, 92, the Fifth United States Circuit Court of Appeals asserts this proposition: "An employee working both inter-state and intrastate must point out what part of his work was in intra- and what part in inter-state commerce." Citing in support thereof Klotz v. Ippolito, D.C., 40 F.Supp. 423; Fleming v. Arsenal Building Corp., D.C.,

38 F.Supp. 207; Jewell Tea Co. v. Williams, 10 Cir., 118 F.2d 202.

██ Within limitations which have no application here we believe this is the true rule. Here the evidence fails to show what part of the labor was in intra and what part in interstate commerce.

It follows that the court was not in error in instructing a verdict against plaintiff.

Judgment affirmed.

WALTHALL, J., not participating.

## On Motion for Rehearing.

PRICE, Chief Justice.

In the original opinion herein it is stated: "We are further of the opinion that an employee engaged in the State in the generation and transmission of electrical power to a customer such as a telegraph company, who utilizes same in part to transmit messages without the State, is not engaged in interstate commerce. We do not believe that the generation of the electricity for the purpose of such use constitutes the 'production of goods for commerce.'"

██ In our opinion the proposition that such an employee is not engaged in interstate commerce is correct. We have grave doubt as to the correctness of the proposition that such activity does not constitute the "production of goods for commerce."

██ We do not mean that the purchaser is not engaged in interstate commerce in so far as the electricity produced is utilized to transmit interstate messages. Electrical current or power is an article of commerce. It is bought and sold every day. In case it is produced for use in transmission of interstate messages, it is a means of interstate commerce when utilized by the purchaser. The construction of a passenger coach is perhaps not interstate commerce, although it could hardly be said that if the purchaser intended to use same in interstate commerce, the coach would not be "produced for commerce." By the same token, we think that if the manufacturer of the coach intended to sell the same to one who was to use it in interstate commerce, the manufacturer is "producing goods for commerce." It is true that the purchaser does not intend to resell the article; but such purchaser does utilize same in the performance of a service which constitutes interstate commerce. Ice produced for the consumption of an interstate carrier is not transported for sale, but is used only as an aid in the furtherance of interstate commerce. An employee engaged in the production of such ice to be used for such purpose would, we think, be engaged in the "production of goods for commerce." It has been so held by one of the intermediate Federal courts. Fleming v. Atlantic Co., D.C., 40 F.Supp. 654.

As indicating the broad and comprehensive coverage of the Fair Labor Standards Act and as in a measure supporting our conclusion in a general way, we call attention to the cases of Enterprise Box Co. v. Fleming, 5 Cir., 125 F.2d 897, and a case handed down by the U. S. Supreme Court after the submission of the briefs in this case, Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638.

However, in this case, the evidence fails to directly show that during the time of plaintiff's employment defendant was selling electric current generated at defendant's San Angelo plant for the transmission of messages beyond the borders of the State. Under appellee's construction thereof, it only shows that at the date of the trial defendant's San Angelo plant was engaged in part in this activity. The relevant time was the period during which plaintiff claimed the overtime. The general character of defendant's activities during this period was in issue. Appellee did not object to the testimony at the time it was offered—did not by cross-examination seek to show same was irrelevant. Under these conditions, if by any reasonable construction of the testimony it might be referable to the relevant period, an issue of fact was thereby raised. But while this is true, the testimony in itself must furnish a basis for such inference.

We have carefully reread the testimony, and in the case of each witness it is only susceptible of the construction that at the time the witness was testifying it was then purchasing electrical current from defendant as an aid or means of engaging in interstate commerce. For how long prior to the trial the witnesses had been purchasing current for such purposes in no way appears from the testimony. The trial was in June, 1941. The period during which plaintiff claimed overtime was from the 24th day of October, 1938, to the 25th day of August, 1940.

We do not believe that from the fact that the witnesses were in June, 1941 purchasing electric current from defendant, it can be reasonably inferred that they were so purchasing same during the period covered by plaintiff's suit.

We regret that it is not in our power to reverse the case to the end that plaintiff might supply, if able, this deficiency in proof. The trial court entered a proper judgment under the evidence introduced, and it is beyond our power to reverse same.

We adhere to the views expressed in our original opinion, that, the furnishing by the San Angelo plant of current for use outside the State being only sporadic, the burden was upon plaintiff to show that he put in overtime in this activity.

The motion for rehearing is hereby overruled.

WALTHALL, J., not participating.