**TRUCK DRIVERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS LOCAL UNION NO. 941 v. WHITFIELD TRANSP., Inc.**

No. 4920.

Court of Civil Appeals of Texas. El Paso.

April 15, 1953.

Rehearing Denied May 20, 1953.

948

Houston Clinton, Jr., Mullinax & Wells, Dallas, for appellant.

William F. Smith, Burges, Scott, Rasberry & Hulse, El Paso, for appellee.

Andress, Lipscomb & Peticolas, El Paso, for Interline Carriers.

PRICE, Chief Justice.

This is an appeal from a judgment of the District Court of El Paso County, 41st Judicial District, in a suit wherein Whitfield Transportation, Inc., was plaintiff, hereafter designated as such, Alabam Freight Lines, Inc., Gillette Motor Transport, Inc., Western Truck Lines, Ltd., Sunset Motor Lines, Inc., Texas-Arizona Motor Freight, Inc., and Southern Express, Inc., and Karl Mielke, Ike Young, J. R. McDade, C. B. Olney and William Wilder were defendants, in which suit Truckdrivers, Chauffeurs, Warehousemen and Helpers' Local Union No. 941 of El Paso was intervenor, defendants above named being hereafter desginated as such, and the intervenor being so designated.

The judgment in favor of plaintiff enjoined said corporate defendants and the individual defendants (the individual defendants being each an officer of one of the corporate defendants) in substance as follows: The defendant Texas-Arizona Motor Freight Line and its officer-agent Olney was enjoined from refusing to accept and transport towards destination all commodities ordinarily transported by motor vehicles which may be lawfully tendered to it by plaintiff at El Paso, Texas, and which may be destined to and consigned to points served by said corporate defendant either alone or in conjunction with connecting motor freight carriers. Further, defendants were enjoined from refusing to deliver to plaintiff at El Paso, Texas, any and all commodities ordinarily transported

by motor carriers which may be destined to points served by plaintiff either directly or through its connecting carriers and which may be routed by either the shipper or the receiver or consignee over the lines of plaintiff, from refusing to deliver to plaintiff at El Paso, Texas, any and all commodities ordinarily transported by motor carriers which may be destined to points served by plaintiff either directly or through its connecting carriers, and which may be routed by the defendants, their agents or employees at the point where such freight was received over the lines of plaintiff as a connecting carrier, because of any directions or inducements received by defendants to divert their freight to carriers other than plaintiff from the intervenor, its officers, agents or members, other union or unions, persons or corporations, or because of any concert of action between defendants and intervenor, their officers, agents, employees or members, or between any two or more of them in the matter of withholding patronage, labor or other beneficial business intercourse from such person, firm or corporation, or in the matter of interfering with or attempting to prevent the free flow of commerce. Further, the defendants were enjoined from refusing to continue their past practice existing between defendants and plaintiff to deliver and tender to plaintiffs at El Paso, Texas, any and all commodities ordinarily transported by motor carrier, which may be destined to points served by plaintiff either directly or through its connecting carriers which although not routed by either the shipper or receiver or consignor at the point of origin by the defendants, their agents, officers, employees or servants over the lines of plaintiff, all such shipments as have in the past in the regular course of business between plaintiff and defendants been delivered to plaintiff by defendants for transportation by plaintiff to the ultimate destination, because of any direction or inducements received by defendants from the intervenor, other union or unions, the officers, agents or members of intervenor, persons or corporations, to divert their freight to carriers other than plaintiff, or because of any concert of action, plan or combination between defendants and intervenor, their officers, agents, employees, or members, or between any two or more of them in the matter of withholding patronage, labor or other beneficial business intercourse from plaintiff in the matter of interfering with or attempting to prevent the free flow of commerce or in the matter of creating or tending to create restrictions in commerce. There is this limitation contained in the judgment awarding the injunction, that same was not to prevent defendants from interlining freight with carriers competing with plaintiff where such interlining is merely a continuation in a similar manner of the past course of dealing with such competing carrier by defendants, and further the injunction did not compel defendants or any of them to ship by plaintiff if after tendering it to plaintiff under the provisions of the injunction plaintiff is unable to transport same.

From this judgment the intervenor has perfected this appeal. Plaintiff's petition averred in substance that it was engaged in the business of transporting merchandise by motor vehicles for hire as a common carrier between El Paso, Texas, and various points within the State of New Mexico and other states in the western part of the United States; at all times it had on file with the appropriate governmental bodies tariffs setting forth the rates at which it offered to transport and was transporting merchandise for hire over its lines, and at all times referred to had all of the required permits and licenses sufficient to authorize it to transact the business herein referred to, between El Paso, Texas, and various points within the state of New Mexico and other states in the Western part of the United States; further that each of the corporate defendants was lawfully engaged in the transport of merchandise by motor vehicles for common carriers between various points in the State of Texas, and which has had and now has on file its tariffs showing the rates at which it offers to transport merchandise between various points, and which at all times referred to had all commercial licenses necessary to enable it to transact the business transacted by each as herein referred to.

Plaintiff, it is averred, transported no merchandise to points within the state of Texas other than to El Paso, Texas, and the transportation to El Paso, Texas, was from points within the state of New Mexico and other states within the western part of the United States; that for several years immediately prior to the filing of its petition plaintiff and defendants had regularly engaged in the practice of plaintiff delivering to defendants merchandise received by it for transportation at various points along its line, or from connecting carriers with it for transportation by defendants or their connecting carriers to the ultimate destination other than El Paso; that defendants received such merchandise from the plaintiff and transported same to its destination either themselves or through their connecting carriers in accordance with their tariffs; that the corporate defendants for several years had engaged in the practice of delivering to plaintiff merchandise received by said defendants for transportation from various points along defendants' lines or from their connecting carriers, sometimes consigned over plaintiff's route either by the party shipping or receiving, or on other occasions the selection of the connecting carrier being left to the discretion of defendants, such merchandise to be transported by plaintiff to various points along its lines to its ultimate destination or delivery to connecting carriers; that at all times the business relations between the plaintiff and each of the corporate defendants had been satisfactory and had met the requirements of the law of convenience and necessity of the public; further that three or four days prior to the filing of plaintiff's petition the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, A. F. L. Union, established a picket line at several of plaintiff's places of business outside the state of Texas; before establishing such picket lines such union had no communication with nor made any demand of plaintiff whereby plaintiff is without information of the nature of such complaint, if any, that said union has against plaintiff. None of the employees of plaintiff have participated in this picketing; that there exists no labor dispute between plaintiff and any of its employees; further that on or about the 14th day of April, the corporate defendants and the individual defendants notified plaintiff either through said individual defendants or through other employees and agents that they and each of them would not deliver to plaintiff any merchandise which may be in the course of transportation over their lines and the lines of plaintiff, each of said corporate defendants and individuals through such individual, and stated the sole and only reason for such action was the Labor Unions had told said defendants that they should divert their freight from plaintiff to some other carrier; Further that by reason of the acts of defendants, corporate and individual, as alleged herein, plaintiff has been put to substantial inconvenience, delay and expense and the service rendered by plaintiff and its connecting carriers by motor truck has been disrupted and in each instance the customer has and will become dissatisfied and plaintiff has and will sustain loss. There is an averment as to inadequacy of damages to remedy the legal wrongs inflicted by defendants upon plaintiff. It is averred that the defendants were acting, in committing these acts jointly and in concert with each other, and in furtherance of a conspiracy in restraint of trade, and in participating with the aforesaid Union and/or labor unions unknown to plaintiff in a secondary boycott of plaintiff, and concerted actions on the part of defendants, plaintiff is suffering and will suffer irreparable injury. Plaintiff sought as against the corporate defendants and their named officers and employees an injunction substantially in terms as granted by the judgment.

The corporate defendants and their respective officers sued as defendants answered in substance as follows: Denying specially that they were acting jointly and in concert with each other, and with the other defendants in the cause, in the furtherance of a conspiracy in restraint of trade, and deny that they are participating with any labor union or unions in a secondary boycott against plaintiff, and in this connection defendants allege that they have not refused to accept freight from the

Whitfield Transportation Company nor have they refused to deliver freight to the company.

The intervenor, although no relief was sought against it, sought and obtained leave to intervene. It undertakes to reply to the order to show cause, which is not directed against it, as follows: Assails the jurisdiction of the Court on the grounds that the question tendered for determination was a question for the determination of the Interstate Commerce Commission, pursuant to Motor Carriers Act of 1935 as amended, 49 U.S.C.A. §§ 301 to 327, and for the further reason that if the Interstate Commerce Commission does not have exclusive jurisdiction, the District Court is without jurisdiction because of plaintiff's failure to apply to the Texas Railroad Commission for relief; asserts the court had no power to direct defendants or the other members of this union to deliver freight to plaintiff when in the exercise of their right of freedom to contract and as a matter of good business judgment defendants desired other carriers to transport their freight; denies that it or any of its officers or agents had in anywise threatened any of defendants or in any way conspired with any of the defendants in violation of plaintiff's rights; denies that it is acting jointly and in concert with the defendant or any other person in furtherance of a conspiracy in restraint of trade and the furtherance of any secondary boycott against plaintiff. It admits that it had advised several of the defendants that plaintiff had refused to deal with other affiliates of the Teamsters' Union in the State of New Mexico and elsewhere, and that it was advised that said other Teamsters' local Unions engaged in a labor dispute with plaintiff are engaged in lawful picketing of plaintiff at Albuquerque, New Mexico; further that the great majority of truck drivers, dockmen, warehousemen and helpers employed by defendants are members of intervenor, and that any injunction issued herein against defendants, their officers, agents and employees would thus effect and be an injunction of the members of this intervenor, and that there is no basis for enjoining said members or in any wise restricting their rights to contract or

to choose the truck line to which they will forward interline freight. By what is denominated a "Supplemental Answer" intervenor pleads in answer to the allegations contained in the answer of the corporate defendants and their individual officers and employees, that it denies that any of the employees of any of the aforesaid defendants were requested to pick up or deliver freight destined for or coming from plaintiff, Whitfield Transportation Company, Inc., and denies that the employees of the aforesaid defendants or any of them refused to pick up or deliver freight to Whitfield Transportation Company, Inc., the plaintiff. Intervenor denies that any of the employees of defendants have disobeyed any orders or instructions from the agents of any of the above defendants and intervenor would show that the sole reason any of the above defendants failed to interline freight to Whitfield was that in the exercise of their business judgment agents of defendants determined to interline with freight lines which were not engaged in any labor dispute, in order that there would be no question but that the interlined carrier would promptly and efficiently deliver the freight.

The Court made findings of fact and conclusions of law in the judgment rendered, in substance as follows: That plaintiff had no dispute with or complaint from its employees and the intervenor did not at the time this suit was filed or at the time of the trial of the cause claim to represent the majority of said employees, but nevertheless the members, agents, employees and representatives of the union combined to formulate and put into effect a plan to cause a secondary boycott to be instituted and carried on by defendants against plaintiff at El Paso, Texas, with respect to interline freight; that the union by threats express or implied coerced the defendants into establishing and carrying on the said secondary boycott, defendants' action in this respect being put into effect pursuant to signal given by intervenor and kept in effect from that time until the issuance of the temporary restraining order in this cause, and that intervenor, its agents, employees, representatives and members, and

defendants, did combine and engage in said secondary boycott, and pursuant thereto did divert interline freight at El Paso, Texas; which otherwise would have been delivered by defendants to plaintiff, and that defendant Texas-Arizona Freight Line, Inc., pursuant to said plan and combination, refused to accept interline freight from plaintiff, and that in connection with all of said acts of defendants and intervenor, their agents, representatives, members and employees there was a concert of action among them and all of them; that such concert of action, plan and combination was instituted and carried on for the purpose of causing injury to plaintiff by withholding patronage from plaintiff, and that it interfered with the free flow of commerce and created restrictions in trade or commerce; that said facts show a violation of the anti-trust laws of the State of Texas and the provisions of Art. 5154f, Vernon's Revised Civil Statutes of Texas, 1925, as amended, and said acts on the part of defendants and intervenor are illegal and should be enjoined, and that said acts on the part of intervenor and defendants will cause plaintiff irreparable injury, and that plaintiff has no adequate remedy at law.

Intervenor first urged a plea of jurisdiction of the court, although its intervention was purely voluntary. It may be that the position is somewhat anomalous that one seek to be made a party to a controversy over which it contends the court has no jurisdiction. The point is not raised in the briefs of the parties and we shall not consider same. In substance the contention is that the controversy was governed by Sections 301 to 327, Chapter 8, Title 49 U. S.C.A., that exclusive jurisdiction to adjudge the controversy was alleged in the United States Interstate Commerce Commission or the National Labor Relationship Board, further that the laws in relation to secondary boycott of the State of Texas and the anti-trust laws apply only to intrastate transportation and not to interstate transportation.

█ It is thought elementary that the intervenor cannot complain as to the injunction as applied to the other defendants.

Intervenor has no authority to represent such defendants. Intervenor is not a common carrier engaged in interstate commerce. It cannot route freight over the line of plaintiff, it is not concerned with the shipment of freight. The only way it was affected or limited in activities by the injunction as granted was that it was prevented from maintaining a secondary boycott against plaintiff and from conspiring with the other defendants to injure plaintiff in its business as a carrier engaged in interstate commerce. Under the evidence the only way it worked injury to plaintiff was inducing the other defendants to divert business from plaintiff.

█ There was no labor dispute between the members of intervenor and the plaintiff. The evidence is ample to sustain the finding of the trial court as to the unlawful action of intervenor in cooperation with the other defendants to seek to impose financial coercion on plaintiff to compel it to yield to the will of intervenor as to matters in which neither it nor its members had a lawful and legal interest. Section 1 of Art. 5154f is as follows:

"It shall be unlawful for any person or persons, or association of persons, or any labor union, incorporated or unincorporated, or the members or agents thereof, acting singly or in concert with others, to establish, call, participate in, aid or abet a secondary strike, or a secondary picketing, or a secondary boycott, as those terms are defined herein."

Paragraph e of Section 2 provides:

"The term 'secondary boycott' shall include any combination, plan, agreement or compact entered into or any concerted action by two or more persons to cause injury or damage to any person, firm or corporation for whom they are not employees".

The constituent elements of a secondary boycott as defined in Subsection e of Section 2 are set forth in subparagraphs 1, 2, 3, 4, 5 and 6. A perusal of this Act will demonstrate that it is general in its application. By its terms it forbids and bans a

secondary boycott in terms broad enough to include a person or corporation engaged in interstate commerce. The intervenor is not so engaged.

■ As has been stated, there was no labor dispute between the members of intervenor and the plaintiff. The evidence is ample to sustain the finding as to the unlawful action of the intervenor in pursuance of an agreement with defendants. In connection with the defendants it sought to impose financial coercion on the plaintiff to compel it to yield to the will of intervenor as to matters in which neither it nor its members had a lawful and legal interest. It was certainly "interfering with or attempting to prevent the free flow of commerce." Turner v. Zanes, Tex.Civ. App., 206 S.W.2d 144, w. r. n. r. e.

■ The plaintiff had no labor dispute with intervenor within the meaning of Art. 5154f, V.R.C.S. We have been unable to find any Federal transportation acts where the Interstate Commerce Commission is authorized to prevent intervenor from instituting or aiding and abetting in a secondary boycott against the plaintiff, nor where the act relating to National Labor Relations Board affords plaintiff any remedy. Neither the judicial department of the United States nor that of the state of Texas is endowed with the power to regulate either interstate or intrastate commerce. Judicial power is to enforce lawful and valid regulations made by the legislative department. The enforcement by the judicial department of either of such governments of lawful and valid regulations is not a regulation of commerce.

■ Under Section 8, Art. 1 of the Constitution of the United States the power of Congress to regulate interstate commerce is plenary. It is elementary that Acts of the State Legislature attempting to regulate Interstate Commerce in conflict with Acts of Congress are invalid. Gibbons v. Ogden, 9 Wheat. 1, 203, 22 U.S. 1, 203, 6 L.Ed. 23. However, where the United States has not occupied the entire field state laws may be valid. Union Brokerage Co. v. Jensen, 322 U.S. 202–212, 64 S.Ct. 967, 88 L.Ed. 1227. It is likewise true that state courts may enforce the civil rights arising under acts of Congress where the act giving the right does not attempt to withhold such jurisdiction from them. Stringer v. Griffin Grocery Co., Tex.Civ. App., 149 S.W.2d 158; Camfield v. West Texas Utilities Co., Tex.Civ.App., 170 S.W. 2d 552, w. r. and authorities cited. Absent a labor dispute as defined in the Texas Act in question, we can find no authority in the Federal regulations of interstate commerce for a labor union to institute a secondary boycott against one engaged in interstate commerce. The forbidding of such a boycott, absent a labor dispute, cannot hinder, prevent or impede interstate commerce. A state law not in conflict with a Federal law which does not tend to hinder or delay interstate commerce, but to foster and protect the right to engage therein for profit is not beyond the power of the state. Perfectly valid state laws protect the property of interstate carriers. It is thought it is not beyond the power of the state to enact a law protecting the right of a carrier engaged in interstate commerce. In our opinion Art. 5154f applies to the intervenor. Further, under the facts in evidence in this case the trial court had jurisdiction to and it was its duty to enforce and protect the plaintiff's rights under this statute. In a general sort of way the following authorities are deemed to support and justify the disposition made of this case. Borden Co. v. Local No. 133, International Brotherhood of Teamsters, etc., Tex.Civ.App., 152 S.W.2d 828; Camfield v. West Texas Utilities Co., Tex.Civ.App., 170 S.W.2d 552, w. r.; Northeast Texas Motor Lines, Inc., v. Dickson, 148 Tex. 35, 219 S.W.2d 795, 11 A.L.R.2d 1065; Turner v. Zanes, Tex.Civ. App., 206 S.W.2d 144, w. r. n. r. e.; Union Brokerage Co. v. Jensen, 322 U.S. 202–212, 64 S.Ct. 967, 88 L.Ed. 1227; Vernon's Ann. Civ.Statutes, Art. 7426–7429; Vernon's Ann.P.C. Art. 1632.

■ The law of the State of Texas forbidding a secondary boycott is neither a regulation of interstate commerce nor a burden thereon, but protects the right to engage therein. The assertion of intervenor that it has a right to rule or ruin in a matter in which it has no legitimate inter-

est is unsound. The State has the power and duty to protect one engaged in interstate commerce from the infraction of a law that applies to all alike.

 While we have not specifically disposed of all of appellant's points of error, we think what has been said sufficiently disposes of them. In our opinion the evidence is ample to sustain the finding of the trial court that intervenor violated both Art. 5154f and the Anti-trust Law of Texas. It is therefore ordered and adjudged that the judgment of the trial court be in all things affirmed.